**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JENNIFER OSEI and STEPHANIE OSEI,**
**Plaintiffs,**

**v.**

**LITTLE MISSIONARY DAY NURSERY;**
**JOANNE J. ROMERO, ESQ.;**
**BENNITTA L. JOSEPH, ESQ.;**
**MICHAEL FARHI, ESQ.;**
**JOHN DOES 1–10; ABC COMPANIES 1–10,**
**Defendants.**

---

**Civil Action No. 3:25-cv-11991-MAS-JTQ**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO SEAL**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT**........4

**LEGAL STANDARD**...........5

**ARGUMENT**.............6

I. The Agreement and Its Attachments Are Judicial Records Subject to a Strong Presumption of Public Access, Which Attaches Precisely Because Defendants Rely on the Agreement in This Litigation........6

II. Defendants' Own Submission Confirms That the Motion Rests on Generalized, Conclusory Assertions and Fails the Particularized Showing Local Civil Rule 5.3(c)(3) Requires........... 7

III. The Public Interest in Disclosure Is Heightened Because This Case Concerns Child Safety, the Suppression of Mandated Reporting, and the Financial Integrity of a Nonprofit Organization........... 10

IV. The Confidentiality Provision Is Itself the Subject of This Litigation and Is Alleged to Be Void as Against Public Policy; Sealing Would Prejudge the Merits........... 12

V. Confidentiality Was Never Plaintiff Stephanie Osei's Choice; It Was Imposed Through Counsel's Malpractice, and She Has Sought to Undo It Continuously Since 2022.13

VI. Any Genuinely Private Information Can Be Protected by Narrowly Tailored Redaction, Which Plaintiffs Do Not Oppose......... 14

VII. Plaintiffs' Separate Opposition Is Proper; Local Civil Rule 5.3 Does Not Require an Objecting Party to Join in Seeking the Very Seal It Opposes..........15

VIII. Defendants' Stated Grounds for Sealing Are Wrong on the Law, and Two of Them Affirmatively Support Disclosure..........16

**CONCLUSION**........18

Certificate of Service........19

# TABLE OF AUTHORITIES

## Cases

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019)......5, 7

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir. 1986)........7, 16, 17

*In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001)......5

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986)......7

*Enprotech Corp. v. Renda*, 983 F.2d 17 (3d Cir. 1993)........6

*LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216 (3d Cir. 2011)..........6

*Miller v. Ind. Hosp.*, 16 F.3d 549 (3d Cir. 1994).......5

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)........5, 7

## Statutes and Rules

Fed. R. Civ. P. 5.2…….14

L. Civ. R. 5.3passim

N.Y. Gen. Oblig. Law § 5-336……..12, 13

N.Y. Soc. Serv. Law § 413……….10

## PRELIMINARY STATEMENT

1. Plaintiffs Stephanie Osei and Jennifer Osei, appearing pro se, respectfully submit this memorandum in opposition to Defendants' motion to seal the Settlement Agreement and the documents attached to it (Doc. No. 65). The motion should be denied. The law of this Circuit is clear: a settlement agreement becomes a judicial record carrying a strong presumption of public access at the very moment a party files it with the Court or asks the Court to give effect to its terms. That is precisely what Defendants have done. They have placed the Agreement—its release language, its confidentiality provision, and its definitional terms—at the center of this case, invoking it to argue that Plaintiff Jennifer Osei, a non-signatory, is bound by its terms (Doc. No. 44), and relying upon it as a defense to Plaintiff Stephanie Osei's claims. Having made the Agreement the centerpiece of their position, Defendants cannot now remove it from public view.

2. The presumption of access is at its strongest here. This is not a commercial dispute over trade secrets or proprietary pricing. The Complaint alleges that the Agreement's confidentiality terms operate to silence a mandated reporter and to conceal a racially discriminatory environment and the suppression of suspected child-abuse reporting at a daycare entrusted with the care of young children. The public—and in particular the families who entrust their children to that institution—has a direct and weighty interest in knowing whether a private agreement is being used to bury matters bearing on children's safety.

3. Sealing would also be fundamentally unfair. Plaintiff Stephanie Osei never sought confidentiality. As alleged in detail in the Complaint, she made clear from the outset that she did not want secrecy; the confidentiality terms were the product of her former counsel's malpractice and misrepresentations. She was told the Agreement contained the

terms she had requested, when it did not, and was instructed to sign only the signature pages of the document. Since 2022, she has tried—repeatedly, and across more than a dozen institutions—to expose and undo this Agreement, only to be dismissed, redirected, or deterred at every turn. To seal the Agreement now would judicially ratify the very secrecy she has spent years contesting, and would prejudge the central question this litigation exists to decide: whether that secrecy is lawful at all.

**LEGAL STANDARD**

4. The public enjoys a common law right of access to judicial records, and that right gives rise to a strong presumption that the public may inspect the materials a court uses in the exercise of its adjudicatory function. See In re Cendant Corp., 260 F.3d 183, 192–94 (3d Cir. 2001); In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 924 F.3d 662, 672 (3d Cir. 2019). The party seeking to seal bears the burden of overcoming that presumption, and may do so only by demonstrating that the material is the kind that courts will protect and that disclosure will work a clearly defined and serious injury. See id.; Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786–87 (3d Cir. 1994).

5. In this District, Local Civil Rule 5.3(c) governs all requests to seal or otherwise restrict public access. The movant must establish, through a particularized showing supported by an affidavit or certification based on personal knowledge: (a) the nature of the materials at issue; (b) the legitimate private or public interest that warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief is denied; and (d) why a less restrictive alternative to sealing is not available. L. Civ. R. 5.3(c)(3). Broad, conclusory allegations of harm—unsubstantiated by specific examples—do not satisfy

this standard. The movant must articulate with particularity what injury would result and why no narrower measure would suffice; the mere fact that a document has been designated "confidential" is not itself a legitimate interest sufficient to support sealing.

## ARGUMENT

### I. The Agreement and Its Attachments Are Judicial Records Subject to a Strong Presumption of Public Access, Which Attaches Precisely Because Defendants Rely on the Agreement in This Litigation.

6. A settlement agreement is a judicial record subject to a presumptive right of public access in two circumstances especially pertinent here: (1) when the agreement is filed with the district court; and (2) when a party seeks the court's interpretive assistance regarding the agreement or otherwise moves to enforce its provisions. See LEAP Sys., Inc. v. MoneyTrax, Inc., 638 F.3d 216, 220 (3d Cir. 2011); Enprotech Corp. v. Renda, 983 F.2d 17, 20 (3d Cir. 1993) (a court's action on a settlement is a matter the public has a right to know about and to evaluate). Both triggers are squarely present in this case.

7. Defendants are not passive custodians of a private contract. They have affirmatively placed the Agreement before the Court and asked the Court to give it legal effect. In Document No. 44, Defendants characterized Plaintiff Jennifer Osei as acting "on behalf of" Plaintiff Stephanie Osei—an assertion that, by its terms, seeks to bring a non-signatory within the Agreement's Section 1(d) definitions and to bind her to its confidentiality, release, and non-disparagement provisions. Defendants likewise rely upon the Agreement's release language as a defense to Plaintiff Stephanie Osei's claims. A party that uses a settlement agreement as a sword—to obtain dismissal, or to bind a person who never signed

it—cannot simultaneously wield secrecy as a shield to keep that same agreement from the public. The presumption of access applies with full force. See Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343–45 (3d Cir. 1986) (common-law right of access applied to a settlement agreement filed with the court; once a settlement is filed, it becomes a judicial record subject to public access, and the generalized interest in encouraging settlements does not outweigh that right).

**II. Defendants' Own Submission Confirms That the Motion Rests on Generalized, Conclusory Assertions and Fails the Particularized Showing Local Civil Rule 5.3(c)(3) Requires.**

8. Defendants' own index of materials makes the deficiency plain. For all three categories of material—the Settlement Agreement (Dkt. No. 61-13), the Acknowledgment of Claimant's Preference as to Confidentiality (Dkt. No. 63-1), and the Confidential Settlement Term Sheet (Dkt. Nos. 63-2 and 63-3)—Defendants offer word-for-word identical justifications. They make no document-specific showing of any kind, and the single generic recitation they repeat satisfies none of the rule's three substantive prongs. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient as a matter of law. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786–87 (3d Cir. 1994) (quoting Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)); In re Avandia, 924 F.3d at 672.

9. **First, the only interest Defendants identify is the confidentiality label itself.** Defendants' entire stated basis is that each document "contains highly confidential information" and that "the Agreement states that the terms are to be confidential." But the fact that a document has been designated confidential—whether by the parties' own agreement or

otherwise—is not, without more, a legitimate interest sufficient to support sealing under Rule 5.3. An interest defined solely by the existence of the confidentiality clause is circular: it asks the Court to seal the documents because the documents declare themselves secret.

10. **Second, the asserted injury is speculative and, to the extent defined at all, is the wrong kind of harm.** Defendants say only that they "could be exposed to injury" because the documents "contain the confidential terms of the Settlement Agreement between two private parties." That the word "could" is doing the work is telling: a speculative possibility of harm is not the clearly defined and serious injury the rule demands, which must be shown with specificity. The balance of the stated injury is "reputational harm due to the disclosure of the terms of the settlement." But the reputation Defendants seek to protect is their reputation in the face of allegations of racial discrimination, retaliation against a whistleblower, the suppression of suspected child-abuse reporting, and the suspected financial mismanagement of nonprofit funds. The desire to avoid the reputational consequences of public awareness of alleged misconduct is not a cognizable injury under the access standard; it is the very interest the right of public access exists to vindicate. Nor is this a case implicating the kinds of interests sealed that exist to protect. The categories of material courts withhold from public access—trade secrets, proprietary commercial data, and confidential business information whose disclosure would cause competitive injury—are wholly absent here. Defendants do not contend, because they cannot, that these documents contain any trade secret or proprietary commercial information, or that disclosure would cause them any competitive harm. This is an individual employment-discrimination settlement, not a commercial agreement, and the

only injury Defendants assert is reputational. Where, as here, the movant identifies no trade-secret or competitive interest and rests solely on a desire to avoid the reputational consequences of public scrutiny, the clearly defined and serious injury the rule requires is simply not present.

11. **Third, Defendants offer no reason that targeted redaction would not suffice.** On the least-restrictive-alternative prong, Defendants state only that "[t]here is no less restrictive alternative" and then restate that the documents are confidential. That is a bare conclusion, not a showing. And the gap cannot be filled, because Defendants never identified any specific provision or category of information whose disclosure would cause harm. Having failed to articulate what they are protecting or what concrete injury disclosure would cause, Defendants cannot explain why narrowly tailored redaction of that information would be inadequate. Wholesale sealing of three entire documents is the most restrictive relief available, not the least.

12. **Fourth, the materials are already judicial records, as Defendants' own docket numbers confirm.** Defendants describe the documents as concerning "the resolution of a private lawsuit" between "two private parties." But these are no longer private submissions. Defendants have filed them on the public docket (Dkt. Nos. 61-13, 63-1, 63-2, and 63-3) and rely upon them in this litigation. As set forth in Point I, the presumption of public access attaches at precisely that moment. That a document originated in a private settlement does not exempt it from access once it becomes part of the judicial record.

13. **Finally, Defendants' justification is self-defeating as applied to the very documents at issue.** Defendants seek to seal the Settlement Agreement and, in particular, the Acknowledgment of Claimant's Preference as to Confidentiality on the sole ground that

the parties "expressly contracted for the confidentiality of the terms." But whether Plaintiff Stephanie Osei knowingly and voluntarily agreed to confidentiality at all—and whether the confidentiality provision genuinely reflects her preference, as New York General Obligations Law § 5-336 requires—is among the central disputed questions this case exists to decide. The Acknowledgment of Preference is the very document on which that question turns. Defendants cannot invoke the contested confidentiality clause as the justification for sealing the evidence of whether that clause is valid; to do so assumes the conclusion and would bury the key proof on the merits before the merits are reached.

14. **The motion also appears to lack the required evidentiary foundation.** Local Civil Rule 5.3(c)(3) requires that the showing be made by affidavit, declaration, or certification based on personal knowledge. To the extent Defendants' submission rests only on the conclusory statements of counsel, without a declarant possessing personal knowledge of any concrete injury, that is an independent deficiency in the motion.

## III. The Public Interest in Disclosure Is Heightened Because This Case Concerns Child Safety, the Suppression of Mandated Reporting, and the Financial Integrity of a Nonprofit Organization.

15. Where a sealing request implicates public health or safety, the presumption of access is at its peak. This case sits squarely within that category. Plaintiff Stephanie Osei was a mandated reporter under New York Social Services Law § 413 et seq.—an obligation that cannot be extinguished by private contract. The Complaint alleges that the Director of Little Missionary Day Nursery instructed staff and mandated reporters not to report suspected child abuse, but instead to bring concerns to her; that Plaintiff witnessed suspected neglect and psychological abuse of a child; and that Plaintiff's good-faith

attempts to contact the New York State child-abuse reporting hotline in December 2024 were obstructed, including a call that was rerouted away from the hotline.

16. The public interest here is not limited to child safety. Little Missionary Day Nursery is a nonprofit organization, and the protected disclosure that preceded Plaintiff Stephanie Osei's termination included a report of suspected financial mismanagement of nonprofit funds. The public has a distinct and substantial interest in the financial integrity of a tax-exempt charitable institution—an interest shared by the families it serves, its donors, and the regulatory authorities charged with overseeing nonprofit entities. A confidentiality agreement should not be permitted, under the cover of a sealing order, to conceal allegations that charitable funds were misused. This concern reinforces, independent of the child-welfare allegations, why the presumption of public access is strongest in this case.

17. The families who entrust their children to Little Missionary Day Nursery, and the public generally, have a direct and substantial interest in knowing whether a confidentiality agreement is being used to suppress information that bears on the safety of children at that institution. Sealing the Agreement would not merely deny the public access to a judicial record—it would compound the precise harm the Complaint seeks to remedy, by giving the force of a court order to the very secrecy that allegedly impeded the reporting of suspected child abuse. The Court should decline to lend its authority to that result.

**IV. The Confidentiality Provision Is Itself the Subject of This Litigation and Is Alleged to Be Void as Against Public Policy; Sealing Would Prejudge the Merits.**

18. Defendants ask the Court to seal the Agreement on the strength of a confidentiality clause whose validity is the very thing this case will decide. The Complaint alleges that the

confidentiality provision is void and unenforceable on multiple independent grounds: that it was not entered knowingly and voluntarily and fails to satisfy New York General Obligations Law § 5-336, which reflects New York's strong public policy disfavoring confidentiality provisions in discrimination matters except where they genuinely reflect the complainant's preference and follow prescribed procedures; that it conflicts with Plaintiff's non-waivable mandated-reporter obligations; and that it impermissibly bars Plaintiff from communicating with a percipient witness to suspected child-welfare misconduct.

19. New York has codified, as a matter of public policy, that a confidentiality term in the settlement of a discrimination claim belongs to the complainant, not to the employer. Under New York General Obligations Law § 5-336, no employer may include in the settlement of a claim involving discrimination, harassment, or retaliation any term that would prevent disclosure of the underlying facts "unless the condition of confidentiality is the complainant's preference." The statute requires that any such term be provided to the complainant in writing, that the complainant be given up to twenty-one days to consider it, that the complainant's preference be memorialized in an agreement signed by all parties, and that the complainant retain at least seven days after execution to revoke. Confidentiality is thus the complainant's prerogative, designed for the complainant's protection; it is not a tool the employer may wield against the complainant's wishes.

20. Here, Defendants seek to do precisely what the statute does not permit: to invoke confidentiality against the complainant herself. Plaintiff Stephanie Osei alleges that she was never advised of her rights under § 5-336, that the statute's written-disclosure, consideration, and revocation procedures were not followed, and that confidentiality was

never her preference. To the contrary, Plaintiff affirmatively opposes confidentiality and seeks the very disclosure Defendants ask the Court to prevent. A confidentiality provision that does not reflect the complainant's preference, and that was not adopted in compliance with § 5-336, cannot supply the legitimate interest required to seal, least of all where the complainant herself seeks disclosure.

21. To seal the Agreement on the basis of that contested clause would put the Court's thumb on the scale of the ultimate question before it, granting Defendants the benefit of the very provision Plaintiffs contend is unlawful before that question has been adjudicated. Public policy and the orderly resolution of this dispute both counsel against sealing the document whose enforceability is itself in controversy.

**<u>V. Confidentiality Was Never Plaintiff Stephanie Osei's Choice; It Was Imposed Through Counsel's Malpractice, and She Has Sought to Undo It Continuously Since 2022.</u>**

22. The premise of any confidentiality interest—that the party to be bound chose secrecy—is absent here. From the outset of the settlement process, Plaintiff Stephanie Osei made her terms clear: no online or physical monitoring of any kind, no blacklisting, no contact, and a letter of recommendation. She did not ask to be silenced. As alleged in the Complaint, she was instead told that the Agreement contained the terms she had requested when it did not; she was instructed to print, sign, and notarize only the signature pages of an agreement she was never permitted to review; and the executed Agreement was then withheld from her for approximately eighteen months. The confidentiality provision was not the product of Plaintiff's informed choice. It was the product of the malpractice and misrepresentations alleged against her former counsel.

23. Far from acquiescing in secrecy, Plaintiff Stephanie Osei has spent years trying to bring this Agreement and the underlying conduct into the light. Since 2022, Plaintiffs have reported to, or sought assistance from, a long series of institutions—including local police departments, a county prosecutor's office, the Federal Bureau of Investigation, the United States Department of Justice, the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the New York State child-abuse reporting hotline, and successor counsel—and at each turn were dismissed, redirected, or deterred. A litigant who has worked for years to expose an agreement she contends was unlawfully imposed should not have the courthouse doors closed on that effort by an order sealing the very document she has fought to disclose.

## VI. Any Genuinely Private Information Can Be Protected by Narrowly Tailored Redaction, Which Plaintiffs Do Not Oppose.

24. Local Civil Rule 5.3(c) requires the movant to show why a less restrictive alternative to sealing is not available. Defendants cannot make that showing, because an obvious and adequate alternative exists. Plaintiffs recognize that the Agreement and its attachments may contain discrete categories of genuinely private information—for example, Social Security numbers, financial-account numbers, dates of birth, the names of any minor children, and individual medical or mental-health record details. Plaintiffs do not oppose the targeted redaction of those discrete items in accordance with Federal Rule of Civil Procedure 5.2 and Local Civil Rule 5.3.

25. That narrowly tailored redaction fully protects any legitimate privacy interest without depriving the public of access to the Agreement itself—the substantive terms of which are central to this case and to the public concerns it raises. Wholesale sealing of the

Agreement and everything attached to it is not the least restrictive means of protecting private identifiers; it is the most restrictive, and it sweeps far beyond anything the cited privacy interests could justify.

**VII. Plaintiffs' Separate Opposition Is Proper; Local Civil Rule 5.3 Does Not Require an Objecting Party to Join in Seeking the Very Seal It Opposes.**

26. Defendants suggest that Plaintiffs' opposition is procedurally improper, asserting that the Rule requires the parties to file a "joint request" and characterizing Plaintiffs' decision to file a "separate opposition" as a departure from that requirement. Local Civil Rule 5.3(c) provides that a request to seal shall ordinarily be made by a single, consolidated motion on behalf of all parties. From our understanding, that provision exists to consolidate the sealing requests of parties seeking sealing, so that the Court may address them together; it does not require a party opposing sealing to join in a motion to seal the very documents it contends should remain public. This is why judicial review is required in the first place: due to differing interpretations of procedures. We interpret it as follows: if a party opposes a sealing request, simply stating that you oppose it while offering separate opposition is appropriate. A joint filing request is if Plaintiffs agreed to see it.

27. From our understanding, the Rule expressly contemplates opposition. It requires the moving party to identify, in its motion, any party in opposition to the sealing and the basis for that opposition. Defendants' own index of materials contains a dedicated column captioned "Party in Opposition to Sealing, if any, and Basis." A Rule that requires the movant to disclose opposition—and a motion form that supplies a column to record it—cannot be read to forbid the opposition itself. Plaintiffs timely advised Defendants that they do not consent, and Plaintiffs set forth the basis for their opposition in this memorandum, which

is precisely the vehicle the Rule provides for that purpose. Nothing in the Rule required Plaintiffs to articulate the full legal basis for their opposition during the parties' pre-motion correspondence.

**VIII. Defendants' Stated Grounds for Sealing Are Wrong on the Law, and Two of Them Affirmatively Support Disclosure.**

28. Defendants' supporting certification rests on three assertions. Each fails as a matter of law, and two of the three reinforce, rather than overcome, the presumption of public access.

29. **First, the absence of a government party does not defeat the right of access.** Defendants argue that because the case involves "two private litigants," because "[n]o government entities or public officials are named as parties," and because "the dispute is not of a public nature," "the public has no legitimate interest" in the documents. That is not the law. The common-law right of public access attaches to the records a court uses to adjudicate civil litigation, and it does not depend on the presence of a government party or on a threshold finding that the case is sufficiently "public." The controlling access decisions of this Circuit each arose from litigation between private parties. See, e.g., Hotel Rittenhouse, 800 F.2d at 343–45 (private commercial parties; common-law right of access applied to their settlement agreement). The presence of a government party has never been a prerequisite to the public's right to inspect judicial records. And in any event, as set forth in Point III, this dispute is one of substantial public concern—implicating the safety of children at a daycare, the suppression of mandated child-abuse reporting, and the suspected mismanagement of nonprofit charitable funds—so Defendants are wrong even on their own framing.

30. **Second, that Plaintiffs filed the documents with the Court is a reason for access, not for sealing.** Defendants assert that "[t]he documents must be sealed because Plaintiffs have already filed them with the Court." This argument is backward. The filing of a document with the Court is not a basis to seal it; it is the very event that gives rise to the presumption of public access. As set forth in Points I and II, a settlement agreement becomes a judicial record subject to the right of access precisely when it is filed with the court or relied upon in the litigation. See Hotel Rittenhouse, 800 F.2d at 345 (once a settlement is filed with the court, it becomes a judicial record subject to public access). Defendants' contention therefore concedes the dispositive fact: these documents are now part of the judicial record, and the public's right of access attaches accordingly.

31. **Third, the bare assertion that the documents are "confidential in their entirety" is not a showing.** Defendants assert that there is no less restrictive alternative "since the documents are confidential in their entirety." This is the same conclusory circularity that pervades the motion. The claim that three separate, multi-page documents are "confidential in their entirety"—such that not a single provision could be disclosed even in redacted form—is implausible on its face and is offered without any document-specific or provision-specific analysis. Having identified no particular term whose disclosure would cause a concrete injury, Defendants cannot show that redaction of such terms would be inadequate. As set forth in Point VI, narrowly tailored redaction of any genuinely private identifiers is the available, less restrictive alternative and fully answers any legitimate concern.

32. **The certification also confirms the absence of an evidentiary foundation.** Defendants' certification, signed by counsel, certifies these statements "to the best of [counsel's]

knowledge." But the statements are legal conclusions—that the public has "no legitimate interest," that there is "no less restrictive alternative," and that the documents are "confidential in their entirety"—not facts within the personal knowledge of the certifying attorney. A certification reciting legal conclusions does not supply the particularized, fact-based showing of a clearly defined and serious injury that Local Civil Rule 5.3(c)(3) requires.

## CONCLUSION

33. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to seal in its entirety, or, in the alternative, limit any relief to the narrowly tailored redaction of discrete categories of genuinely private personal identifiers as set forth above, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Stephanie Osei, Pro Se
120 Grand Avenue, P.O. Box 7105
Hackettstown, NJ 07840

Jennifer Osei, Pro Se
120 Grand Avenue, P.O. Box 7105
Hackettstown, NJ 07840

Dated: 6/29, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on 6/29, 2026, I submitted the foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion to Seal to the Clerk of the United States District Court for the District of New Jersey through the Court's Alternate Document System, and that I caused a true and correct copy of the same to be served upon the following via electronic mail:

Amy Valentine McClelland, Esq.
Nukk-Freeman & Cerra, P.C.
26 Main Street, Suite 202
Chatham, New Jersey 07928
amcclelland@nfclegal.com
Attorneys for Defendant Little Missionary Day Nursery

I certify that the foregoing statements made by me are true and correct.

Stephanie O.

Stephanie Osei, Pro Se
120 Grand Avenue, P.O. Box 7105
Hackettstown, NJ 07840

Jennifer Osei

Jennifer Osei, Pro Se
120 Grand Avenue, P.O. Box 7105
Hackettstown, NJ 07840

Dated: 6/29, 2026