Jennifer Osei and Stephanie Osei
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

November 25, 2026

VIA ADS

Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

**Re: Osei v. Little Missionary Day Nursery, et al., No. 3:25-cv-11991-MAS-JTQ Resubmission of Plaintiffs' Opposition to Defendant Farhi's Motion to Dismiss (ECF No. 101); Request That It Be Deemed Filed November 20, 2026**

Dear Judge Shipp:

Plaintiffs, appearing pro se, respectfully resubmit their opposition to Defendant Michael Farhi, Esq.'s Motion to Dismiss (ECF No. 101), returnable December 7, 2026, and ask that it be deemed filed as of November 20, 2026.

Plaintiffs submitted the opposition through the Court's Alternate Document Submission (ADS) system on Friday, November 20, 2026, at 1:38 p.m., three days before the November 23 deadline, and served it on all counsel of record by email the same day. The Court's automated confirmation (Exhibit A) and the service email (Exhibit B) are enclosed. In completing the ADS web form, however, Plaintiffs entered the case number as "3:2025cv1199," omitting the final digit of the correct number, 3:25-cv-11991. Plaintiffs learned of the error today when, after the submission had not appeared on the docket, they telephoned the Clerk's Office, which had no record of a filing under the correct case number.

Plaintiffs therefore resubmit the opposition today under the correct case number. The documents are identical to those submitted on November 20 and served on counsel that day: (1) Memorandum of Law in Opposition, with Certificate of Service, Appendix A (Chronology), and Index of Exhibits; (2) Declaration of Stephanie Osei with Exhibits B, B-3, E, H, and J; (3) Stephanie Osei Exhibits P, Q, and R; (4) Declaration of Jennifer Osei with Exhibits B-1, B-2, B-4, and B-5; and (5) Jennifer Osei Exhibits F, F-1, K, N-1, N-2, and S.

Because the opposition was timely submitted to the Court and timely served, and the only defect was a typographical omission in the case number on the submission form, Plaintiffs respectfully request that the Court deem the opposition filed as of November 20, 2026. In the alternative, Plaintiffs request a brief extension of the opposition deadline to November 25, 2026 under Fed. R. Civ. P. 6(b)(1)(B). The omission constitutes excusable neglect under the factors set

out in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993): (1) there is no prejudice to Defendant, who was served with the complete opposition on November 20; (2) the delay is two days, and Defendant's reply date (November 30) and the December 7 motion day are unaffected; (3) the reason for the delay is a single omitted digit on the ADS web form, with the Court's own system having received the submission three days before the deadline; and (4) Plaintiffs acted in good faith and resubmitted the same day they learned of the error. Plaintiffs regret the error and apologize to the Court for the inconvenience.

Plaintiffs thank the Court for its consideration.

Respectfully submitted,

Stephanie Osei 11/25/26

Stephanie Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

Jennifer Osei 11/25/2026

Jennifer Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

Enclosures: Exhibit A — ADS confirmation email, November 20, 2026 (1:38 p.m.)
Exhibit B — Service email to all counsel, November 20, 2026
Plaintiffs' Opposition (Parts 1–5), as submitted November 20, 2026

**CERTIFICATE OF SERVICE**

We certify that on November 25, 2026, we caused the foregoing letter, with its exhibits and the resubmitted opposition papers, to be submitted to the Clerk of the Court through the Court's Alternate Document Submission system and served by electronic mail upon: Meredith Kaplan Stoma, Esq., Lewis Brisbois Bisgaard & Smith LLP, attorneys for Defendant Michael Farhi, Esq.; John J. Byrnes, Esq., Milber Makris Plousadis & Seiden, LLP, attorneys for Defendant Little Missionary Day Nursery; and Michael D. Celentano, Esq. and Michael J. Marone, Esq., McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for Defendant Joanne J. Romero, Esq. We certify under penalty of perjury that the foregoing is true and correct.

Stephanie Osei 11/25/26

Stephanie Osei

Jennifer Osei 11/25/2026

Jennifer Osei

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Osei, et al. v. Little Missionary Day Nursery, et al.
Civil Action No. 3:25-cv-11991-MAS-JTQ

# EXHIBIT A

to Plaintiffs' Letter of November 25, 2026

ADS Webform Submission confirmation email from the U.S. District Court for the District of New Jersey, November 20, 2026, 1:38 p.m. (submission entered as case number "3:2025cv1199")

Gmail

Jennifer Osei <jennifer.a.osei@gmail.com>

## ADS Webform Submission: Your filing was submitted and will be processed.

1 message

**U.S. District Court for the District of New Jersey** <DO_NOT_REPLY@njd.uscourts.gov> Fri, Nov 20, 2026 at 1:38 PM
To: Jennifer.a.osei@gmail.com

Submitted on Friday, November 20, 2026 - 13:38

Submitted values are:

Name: Jennifer Osei
Phone Number: 9087203713
Email Address: Jennifer.a.osei@gmail.com
Email Address Confirm: Jennifer.a.osei@gmail.com
Select the vicinage in which your submission should be filed: Trenton
Case Number: 3:2025cv1199
Case Caption: Plaintiffs' Brief in Opposition to Defendant Farhi's Motion to Dismiss (ECF No. 101), with Appendix A, Index of Exhibits, and De
Document 1 Description: Plaintiffs' Brief in Opposition to
==More Documents==
Document 2 Description: Part 2 of 5: Declaration of Stephan
Document 3 Description: Part 3 of 5: Stephanie Osei Exhibit
Document 4 Description: Part 4 of 5: Declaration of Jennife
Document 5 Description: Part 5 of 5: Jennifer Osei Exhibits

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Osei, et al. v. Little Missionary Day Nursery, et al.
Civil Action No. 3:25-cv-11991-MAS-JTQ

# EXHIBIT B

to Plaintiffs' Letter of November 25, 2026

Service email to all counsel of record transmitting Plaintiffs' opposition papers, November 20, 2026

Gmail

Jennifer Osei <jennifer.a.osei@gmail.com>

# Osei v. Little Missionary Day Nursery, et al., No. 3:25-cv-11991-MAS-JTQ — Service of Plaintiffs' Opposition to Defendant Farhi's Motion to Dismiss (ECF No. 101)

1 message

**Jennifer Osei** <jennifer.a.osei@gmail.com>
To: mcelentano@mdmc-law.com

Fri, Nov 20, 2026 at 1:46 PM

Counsel:

Please be advised that Plaintiffs today filed with the Court, via CM/ECF, their opposition to Defendant Michael Farhi, Esq.'s Motion to Dismiss (ECF No. 101), returnable December 7, 2026. Courtesy copies of the filed papers are attached and consist of:

1. Memorandum of Law in Opposition (with Certificate of Service);
2. Appendix A — Chronology;
3. Index of Exhibits;
4. Declaration of Stephanie Osei, with Exhibits B, B-3, E, H, J, P, Q, and R;
5. Declaration of Jennifer Osei, with Exhibits B-1, B-2, B-4, B-5, F, F-1, K, N-1, N-2, and S.

Certain exhibits are excerpted to the pages relied upon, as noted in the Index, and medical information has been redacted and marked.

The ECF notice of electronic filing will follow separately. Should any attachment fail to transmit, please let us know and we will resend it.

Respectfully,

Stephanie Osei, Plaintiff pro se
Jennifer Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

**5 attachments**

**Filing_Part_1_of_5_Brief_AppendixA_Index.pdf**
537K

**Filing_Part_3_of_5_Stephanie_Osei_Exs_P_Q_R.pdf**
2530K

**Filing_Part_2_of_5_Stephanie_Osei_Decl_Exs_B_to_J.pdf**
4205K

**Filing_Part_5_of_5_Jennifer_Osei_Exs_F_to_S.pdf**
3704K

**Filing_Part_4_of_5_Jennifer_Osei_Decl_Exs_B-1_to_B-5.pdf**
3656K

Gmail

Jennifer Osei <jennifer.a.osei@gmail.com>

## Osei v. Little Missionary Day Nursery, et al., No. 3:25-cv-11991-MAS-JTQ — Service of Plaintiffs' Opposition to Defendant Farhi's Motion to Dismiss (ECF No. 101)

1 message

**Jennifer Osei** <jennifer.a.osei@gmail.com> Fri, Nov 20, 2026 at 1:45 PM
To: John Byrnes <jbyrnes@milbermakris.com>

Counsel:

Please be advised that Plaintiffs today filed with the Court, via CM/ECF, their opposition to Defendant Michael Farhi, Esq.'s Motion to Dismiss (ECF No. 101), returnable December 7, 2026. Courtesy copies of the filed papers are attached and consist of:

1. Memorandum of Law in Opposition (with Certificate of Service);
2. Appendix A — Chronology;
3. Index of Exhibits;
4. Declaration of Stephanie Osei, with Exhibits B, B-3, E, H, J, P, Q, and R;
5. Declaration of Jennifer Osei, with Exhibits B-1, B-2, B-4, B-5, F, F-1, K, N-1, N-2, and S.

Certain exhibits are excerpted to the pages relied upon, as noted in the Index, and medical information has been redacted and marked.

The ECF notice of electronic filing will follow separately. Should any attachment fail to transmit, please let us know and we will resend it.

Respectfully,

Stephanie Osei, Plaintiff pro se
Jennifer Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

**5 attachments**

**Filing_Part_1_of_5_Brief_AppendixA_Index.pdf**
537K

**Filing_Part_4_of_5_Jennifer_Osei_Decl_Exs_B-1_to_B-5.pdf**
3656K

**Filing_Part_3_of_5_Stephanie_Osei_Exs_P_Q_R.pdf**
2530K

**Filing_Part_5_of_5_Jennifer_Osei_Exs_F_to_S.pdf**
3704K

**Filing_Part_2_of_5_Stephanie_Osei_Decl_Exs_B_to_J.pdf**
4205K

Gmail

Jennifer Osei <jennifer.a.osei@gmail.com>

**Osei v. Little Missionary Day Nursery, et al., No. 3:25-cv-11991-MAS-JTQ — Service of Plaintiffs' Opposition to Defendant Farhi's Motion to Dismiss (ECF No. 101)**
1 message

**Jennifer Osei** <jennifer.a.osei@gmail.com> Fri, Nov 20, 2026 at 1:45 PM
To: "Stoma, Meredith" <Meredith.Stoma@lewisbrisbois.com>

Counsel:

Please be advised that Plaintiffs today filed with the Court, via CM/ECF, their opposition to Defendant Michael Farhi, Esq.'s Motion to Dismiss (ECF No. 101), returnable December 7, 2026. Courtesy copies of the filed papers are attached and consist of:

1. Memorandum of Law in Opposition (with Certificate of Service);
2. Appendix A — Chronology;
3. Index of Exhibits;
4. Declaration of Stephanie Osei, with Exhibits B, B-3, E, H, J, P, Q, and R;
5. Declaration of Jennifer Osei, with Exhibits B-1, B-2, B-4, B-5, F, F-1, K, N-1, N-2, and S.

Certain exhibits are excerpted to the pages relied upon, as noted in the Index, and medical information has been redacted and marked.

The ECF notice of electronic filing will follow separately. Should any attachment fail to transmit, please let us know and we will resend it.

Respectfully,

Stephanie Osei, Plaintiff pro se
Jennifer Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

**5 attachments**

**Filing_Part_1_of_5_Brief_AppendixA_Index.pdf**
537K

**Filing_Part_3_of_5_Stephanie_Osei_Exs_P_Q_R.pdf**
2530K

**Filing_Part_5_of_5_Jennifer_Osei_Exs_F_to_S.pdf**
3704K

**Filing_Part_2_of_5_Stephanie_Osei_Decl_Exs_B_to_J.pdf**
4205K

**Filing_Part_4_of_5_Jennifer_Osei_Decl_Exs_B-1_to_B-5.pdf**
3656K

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER OSEI and STEPHANIE OSEI,<br><br>Plaintiffs,<br><br>v.<br><br>LITTLE MISSIONARY DAY NURSERY; JOANNE J. ROMERO, ESQ.; BENNITTA L. JOSEPH, ESQ.; MICHAEL FARHI, ESQ.; JOHN DOES 1-10; and ABC COMPANIES 1-10,<br><br>Defendants. | Civil Action No. 3:25-cv-11991-MAS-JTQ<br><br>Hon. Michael A. Shipp, U.S.D.J.<br>Hon. Justin T. Quinn, U.S.M.J.<br><br>Motion Day: December 7, 2026<br>(to be decided on the papers)<br><br>TO BE DECIDED ON THE PAPERS |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHAEL FARHI, ESQ.'S MOTION TO DISMISS THE AMENDED COMPLAINT (ECF No. 101)**

**STEPHANIE OSEI**
Plaintiff, pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

**JENNIFER OSEI**
Plaintiff, pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT........................................................................................ 1
STATEMENT OF FACTS..........................................................................................2
ARGUMENT..............................................................................................................9
POINT I — THE STANDARD, AND THE LIMITS ON WHAT THE COURT MAY CONSIDER..................................................................................................................9
POINT II — THE MOTION RESTS ON MATERIALS OUTSIDE THE PLEADINGS AND ON A CHARACTERIZATION OF THOSE MATERIALS.......................................................10
A. The retainer (Ex. C) is not integral, is not undisputedly authentic, and does not say what Defendant say...........................................................................................................10
B. The "private investigator" who "independently" found the allegations "unsubstantiated" appears in neithe....................................................................................................... 11
C. The disengagement letter (Ex. D) is integral — the Amended Complaint attaches it as Exhibit 35 — but it ...................................................................................................... 12
D. If the Court is inclined to consider Exhibits C and D for their truth, or to credit the uncited "private inve...................................................................................................... 13
POINT III — CLAIM VIII STATES A CLAIM FOR LEGAL MALPRACTICE......................13
A. Claim VIII is asserted by Plaintiff Stephanie Osei alone.........................................................13
B. The elements are pleaded......................................................................................... 14
C. Breach is pleaded with particularity, and Defendant's own exhibit supports it.......................14
D. Proximate cause and damages are pleaded...............................................................26
E. Defendant does not raise the Affidavit of Merit, and the period has not begun.......................29
POINT IV — CLAIM IX STATES A CLAIM AGAINST DEFENDANT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; IN T...........................................................29
POINT V — THE OTHER CAUSES OF ACTION LISTED IN THE TITLE OF CLAIM IX ARE NOT ASSERTED AGAINST DEFENDANT, AS...........................................................30
POINT VI — DISMISSAL WITH PREJUDICE IS NOT WARRANTED; THE MAY 27, 2026 ORDER DOES NOT FORECLOSE AMENDMENT...............................................................31
A. The May 27 Order..........................................................................................................31
B. Futility........................................................................................................................ 31
POINT VII — ORAL ARGUMENT...................................................................................33
CONCLUSION................................................................................................................33

## TABLE OF AUTHORITIES

**Cases**


Ashcroft v. Iqbal, 556 U.S. 662 (2009)....9

Brumley v. Camin Cargo Control, Inc., 2012 WL 1019337 (D.N.J. Mar. 26, 2012)....18

Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355 (1988)....29, 30

Chamberlain v. Giampapa, 210 F.3d 154 (3d Cir. 2000)....29

Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015)....18

Cirillo v. ARCO Chem. Co., 862 F.2d 448 (3d Cir. 1988)....24

Conklin v. Hannoch Weisman, 145 N.J. 395 (1996)....14

Coventry v. U.S. Steel Corp., 856 F.2d 514 (3d Cir. 1988)....24

Davis v. Abington Mem'l Hosp., 765 F.3d 236 (3d Cir. 2014)....18

Davis v. Essex County, No. 14-cv-1122 (D.N.J. Dec. 1, 2015)....18

Erickson v. Pardus, 551 U.S. 89 (2007)....9

Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002)....31

Herbert v. Haytaian, 292 N.J. Super. 426 (App. Div. 1996)....14

Hubbard v. Reed, 168 N.J. 387 (2001)....29

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997)....9

In re Merck & Co. Sec., Derivative & ERISA Litig., 493 F.3d 393 (3d Cir. 2007)....31

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)....18

McGrogan v. Till, 167 N.J. 414 (2001)....14

Packard-Bamberger & Co. v. Collier, 167 N.J. 427 (2001)....30

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993)....9, 10

Petrillo v. Bachenberg, 139 N.J. 472 (1995)....14, 32

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)....9, 31

Piscopo v. Pub. Serv. Elec. & Gas Co., 2014 WL 3014284 (D.N.J. July 3, 2014)....17

Saffer v. Willoughby, 143 N.J. 256 (1996)....27

Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014)....28

Steiner v. eBay Inc., No. 1:21-cv-11181-PBS (D. Mass. Aug. 12, 2025)....22


**Statutes, Rules, and Other Authorities**


29 U.S.C. § 255(a)....18

N.Y. Lab. Law § 740....26

N.Y. Soc. Serv. Law § 413....23, 32

N.J.S.A. 2A:53A-27....29

N.J.S.A. 2C:12-10.1....15

Fed. R. Civ. P. 8(d)....27, 28

Fed. R. Civ. P. 12(b)(6)....1, 9, 10, 28

Fed. R. Civ. P. 12(d)....................10, 13, 14, 33
Fed. R. Civ. P. 15(a)....................31
Fed. R. Civ. P. 56(d)....................13
N.J. R. Prof'l Conduct 1.1, 1.3, 1.4, 1.5, 1.15, 1.16, 5.1....................11, 16, 25, 26, 27, 32
Restatement (Second) of Torts § 46....................30

## DOCUMENTS SUBMITTED IN OPPOSITION

Because of their size, the papers submitted in opposition to Defendant Farhi's motion are filed as separate attachments to this Memorandum on CM/ECF, in the following order:

1. This Memorandum of Law (with Certificate of Service at the end);
2. Appendix A — Chronology (cited in the Memorandum as "App. A");
3. Index of Exhibits (one index covering both declarations);
4. Declaration of Stephanie Osei, with Exhibits B, B-3, E, H, J, P, Q, and R;
5. Declaration of Jennifer Osei, with Exhibits B-1, B-2, B-4, B-5, F, F-1, K, N-1, N-2, and S.

Citations to "Ex. __" in the Memorandum are to the exhibits so attached; "Ex. C" and "Ex. D" refer to Defendant's exhibits at ECF No. 101-2. Several exhibits are excerpted to the pages relied upon, as noted in the Index; medical information has been redacted and is marked "[REDACTED — medical]."

## PRELIMINARY STATEMENT

Defendant Michael Farhi, Esq. asks the Court to dismiss, with prejudice, a legal malpractice claim brought by his former client. His motion does not argue that the Amended Complaint fails to allege an attorney-client relationship, a duty, a breach, or damages. It argues that he performed well. To make that argument he attaches, as "the Retainer," an unsigned document that his own email identifies as "a first draft of a retainer agreement," sent for review on December 17, 2023, before the fee was negotiated; he attaches his own disengagement letter and asks the Court to accept its conclusions as true; and he tells the Court that "a private investigator who had been hired by Stephanie" independently concluded her allegations were "unsubstantiated." Def. Br. at 7, 11. His own letter says something different: the person retained was "an expert in electronic data and extraction work," who examined two devices, found no presently detectable spyware, and wrote that the devices "could have been compromised." ECF No. 101-2, Ex. D at 2, 6. That examiner was selected by Defendant and engaged by Plaintiff Jennifer Osei; his engagement letter names her alone; and his assessment, which Defendant does not attach, stated that her cloud account was most likely compromised. Decl. J.O. ¶¶ 11, 13; Ex. N-1. Defendant's brief describes Plaintiffs' allegations as "purported" and "baseless" and their claim as "dissatisfaction." Def. Br. at 6–7, 11. This opposition does not answer characterizations; it answers with Defendant's own letters, his firm's statement, and the dates on each.

A Rule 12(b)(6) motion tests the pleading; it does not permit a defendant to supply his own version of the facts and argue that the plaintiff cannot prove hers. Taken as pleaded — and taken from the face of Defendant's own exhibits — the Amended Complaint states a claim: a lawyer retained to investigate whether a settlement agreement had been breached and whether his client was being harassed obtained the agreement, was told by his client within hours that its

terms were not what she had agreed to, flagged a provision of "possible concern," and advised her of nothing; went seven weeks without speaking to her while his firm drafted the letter ending the engagement; and withdrew by a letter that evaluated civil claims under a criminal burden, analyzed employer workplace monitoring in a case about post-employment conduct by third parties, declared further examination "needless" in the paragraph conceding the devices had not been obtained, and told the client of no deadline, no limitations period, no remedy, and no right to her file. Am. Compl. ¶¶ 44–46, 93–95; Ex. D.

The motion should be denied. If the Court finds any element insufficiently pleaded, dismissal should be without prejudice and with leave to amend, because no court has yet ruled on the sufficiency of any claim against this Defendant. Plaintiffs have proceeded without counsel since Defendant withdrew; this claim concerns what the lawyer who had the documents, the training, and the time did with them.

## STATEMENT OF FACTS

The following is drawn from the Amended Complaint (ECF No. 61) and its exhibits, and — where noted — from the face of the exhibits Defendant himself has placed before the Court. A chronology of the record facts, with sources, is attached as Appendix A. Citations to "Def. Br." are to the ECF header page numbers of ECF No. 101-1. Defendant's Exhibit C appears at ECF No. 101-2, pp. 83–85, and Exhibit D at pp. 87–92; exhibit pages are cited to the exhibit's own pagination. References to "Ex. C" and "Ex. D" are to Defendant's exhibits at ECF No. 101-2. Citations to "Ex. __" otherwise are to the exhibits to the Declarations of Stephanie Osei ("Decl. S.O.") and Jennifer Osei ("Decl. J.O.") submitted herewith; citations to "Am. Compl. Ex. __" are to the exhibits to the Amended Complaint.

1. On December 1, 2023, Plaintiff Jennifer Osei contacted Defendant Farhi on her sister's behalf. He wrote the same day: "It was a pleasure speaking with you today about your sister Stephanie's situation. Please send me her settlement agreement, the NJ Bias Information, and any other electronic and paper information you have acquired about the events." Am. Compl. ¶ 44; Ex. 27.

2. Plaintiff Stephanie Osei retained Defendant in December 2023. Am. Compl. ¶¶ 6, 44, 93. On December 20, 2023, Defendant set the terms in writing to Plaintiff Jennifer Osei: "my initial hire would be to oversee an investigation of the harassment and stalking against your sister and you, to acquire proof of that and to 'connect the dots' back to Ms. Johnson," against a $10,000 retainer "paid in 2 installments"; Jennifer Osei accepted the same day. Ex. B-1. The first $5,000 was paid in cash on December 28, 2023, at the first in-person meeting; the firm's receipt is issued to both Plaintiffs, and its statement posts the payment on January 2, 2024. Exs. B, F. The document Defendant attaches as Exhibit C is the draft he had emailed to Jennifer Osei on December 17, 2023, describing it as "a first draft of a retainer agreement describing the scope of my potential representation of your sister, you and possib[ly] . . . ." Ex. B-2. It bears no signature; it is dated "September 17, 2023," evidently in error; and it preceded the December 20 negotiation of the fee. ECF No. 101-2, Ex. C at 1–3. Plaintiff did not sign it in that form and had no contact with the firm in September 2023. Decl. S.O. ¶¶ 4–7. The executed agreement is part of the client file Defendant has not returned, Am. Compl. ¶ 94(g); his firm holds it and attached an unsigned draft instead. On April 11, 2024, Plaintiffs advised him in writing that the document did not state "the right date that we retained you." Ex. K. He did not correct it. Even by its own terms the engagement was "to initiate and oversee an[] investigation and conduct necessary research of your claim that Eileen Johnson . . . and others have breached May 2022 settlement

agreements . . . and also engaged in harassment, intimidation, stalking and bullying of you and family members since the time of those agreements." Id. at 1.

3. On December 17, 2023, Defendant sent Plaintiff's prior counsel, Defendant Joseph, a letter requesting "a true copy of the fully executed agreement(s)" and the submissions to the mediator; his paralegal followed up December 18 and 20; on December 21 Ms. Joseph replied that she had "already emailed everything to Ms. Osei." Ex. B-5. On December 22, 2023, Defendant received the Settlement Agreement from Ms. Joseph and sent it to Plaintiffs with his review — the first time Plaintiff had seen the complete document since signing its signature pages in May 2022. Am. Compl. ¶ 45; Ex. 29. His transmittal identified "[o]ne term of possible concern," ¶ 6(e), the waiver of discovery rights, and observed that "any obligations for confidentiality are on your sister . . . Those are not reciprocal." ECF No. 80-2, Ex. S-21. Within hours Plaintiff wrote back that her settlement terms had been "no blacklisting, no cyberstalking, or monitoring," and that the flagged provision "was not anything I agreed to." Id.; ECF No. 80-2 ¶ 51. Defendant replied: "The first and second agreements do not show your e-signature. . . . We need to have a conversation. In the meantime, I will get back to Ms. Joseph and ask her for all documents signed by you." Ex. B-3. He did, once. On January 11, 2024, his office wrote Ms. Joseph "again to request copies of the settlement documents signed by Stephanie Osei that contain her signature or e-signature. Your prior transmission did not attach those," demanding "the fully executed documents" by 5:00 p.m. the next day. Ms. Joseph answered within ten minutes: "the agreements were signed separately. But all the claimant, Ms. Osei has to do is sign the agreement for it to be fully executed." Ex. B-5. No further request was made, nothing was said to Plaintiff, and the statement records no entry for either letter. Ex. F. The Term Sheet and the standalone Acknowledgment Form of May 4, 2022 — the pre-signing documents — were

not among the materials transmitted and were produced for the first time in September 2025. Am. Compl. ¶ 45.

4. Plaintiffs submitted their evidence by email. On December 16, 2023 — before the terms were set — Jennifer Osei forwarded Defendant Stephanie Osei's December 2022 and January 2023 submissions to the Middlesex County Prosecutor's Office and Old Bridge Internal Affairs: an itemized, dated list of incidents identifying Mr. De Palma by name, with the Ring-camera footage. Ex. B-2 at 1. Defendant never confirmed that it had been reviewed. Am. Compl. ¶ 46. On January 16, 2024, he sent a spreadsheet, "Osei Timeline and notes," and asked Plaintiff to "respond to the questions" in it — questions about her own footage and her own prosecutor submission. Ex. E. She answered by hand and handed it to him on March 19, 2024. Decl. S.O. ¶ 10. The firm's statement, provided April 16, 2024, bills 43 hours and $16,385; it shows the $5,000 retainer exhausted by January 29, no interim statement ever sent, and $11,385 billed over the following ten weeks without notice to the client. Ex. F. On February 16, 2024, when Plaintiffs raised the video evidence by telephone — the call on which the second February incident was reported — he said he would review it later and asked that they not send so much material. Decl. J.O. ¶ 8. Two months earlier, when Jennifer Osei had apologized for "sending so many emails," he had written: "The more information the better." Ex. B-2 at 17. Plaintiffs met with Defendant in person three times; each meeting concerned the Settlement Agreement, none addressed the conduct, the evidence, or the explanations Plaintiffs had asked him to evaluate, and no meeting or call to review the evidence ever took place. Decl. S.O. ¶ 11. Plaintiff had disclosed her disabilities to Defendant and asked that he explain to her, in conversation, why the evidence was considered insufficient; he did not. Decl. S.O. ¶ 11. On February 15, 2024, Plaintiff regained access to her own email account after approximately a year; between February 15 and 26

Plaintiffs sent Defendant the materials it held, including her communications with prior counsel about the terms she had negotiated. ECF No. 80-2 ¶ 51; Decl. J.O. ¶ 7. The statement records Defendant reviewing client email on nearly every day of that period; on February 29 the firm began drafting the termination letter. Ex. F.

5. Defendant sent a cease-and-desist letter to LMDN on Plaintiff's behalf. Am. Compl. ¶¶ 46, 94(e). LMDN's New Jersey counsel responded on April 18, 2024 — nine days after Defendant withdrew — denying knowledge of the conduct, directing that any further claim be brought in court, and threatening sanctions. Ex. J. On March 26, 2024, when the letter was mailed, the associate had written that she would "keep you updated on any correspondence we may receive." Ex. H at 3. The correspondence arrived; the associate forwarded it to Plaintiffs on April 22, 2024, with the following advice in its entirety: “This confirms they received our letter and responded to it. Please be guided accordingly.” Ex. Q. When Plaintiffs replied the same day, Defendant’s response was two sentences: “Please do not respond to this email. Thank you.” Id. No further communication followed.

6. On February 13, 2024, Jennifer Osei reported to Defendant by email, with video attached, that the power at her residence had gone out, that footprints were in the snow outside before she went out to check, and that a white truck had pulled up on the street behind the house. Ex. S. On the telephone call that followed, on February 16, 2024, Jennifer Osei also reported a second set of footprints in the snow leading to the window of a child's bedroom, and that the network video recorder had been disabled. Am. Compl. ¶¶ 36, 94(i), 101; Decl. J.O. ¶ 8. Defendant’s response on that call was that he would review the footage later, and that Plaintiffs should not send so much material. The firm’s statement records 2.1 hours of “[r]eview client email” by Defendant on February 13, 14, and 15; a 0.6-hour call with the client on February 16

— his last before the withdrawal; and, on February 29, “[d]raft termination letter.” Ex. F. Defendant gave no advice, in writing or on that call, about how to report the incidents, what to preserve, or what to do if they recurred, and did not assist in reporting them. Decl. J.O. ¶ 8. Because they were represented and awaiting his direction, Plaintiffs deferred going to the police; the incident was reported to the Mansfield Township Police only after the withdrawal, later in 2024. Am. Compl. ¶ 36; Decl. J.O. ¶ 9.

7. Defendant's last telephone call with Plaintiffs before the withdrawal was February 16, 2024. Ex. F. On February 29 and March 1 the firm billed 3.8 hours to "[d]raft termination letter." Id. Between March 14 and 26 it drafted, revised, obtained Plaintiffs' approval of, and mailed a cease-and-desist letter to LMDN. Id. Defendant's next call was April 4, 2024; the withdrawal letter followed April 9. Id. In the seven weeks between February 16 and April 4 the statement records some twenty entries by Defendant for "[r]eview client email" — including the period in which Plaintiffs reported the February incident — and no outgoing advice. Id. According to the statement, an associate began work on January 4, 2024, and had billed 7.5 hours before her name appears in any communication to Plaintiffs; she was first copied on January 16. Exs. E, F. She had graduated from law school in May 2023 and was admitted to the bar on November 20, 2023, six weeks before her first entry; she was billed at $350 per hour and accounts for 27.9 of the 43 hours, including the cease-and-desist and termination letters; the firm's own biography identifies no practice area for her. Ex. F; Decl. S.O. ¶ 13. The statement records no entry by Defendant reviewing, revising, or conferring on either letter; the only conferral entries are hers, 0.1 hours on February 21 and 0.3 hours on April 5. Ex. F. No one told Plaintiffs the matter had been assigned to her. Her first direct communication was the March 25, 2024 request to approve the cease-and-

desist, by which point she had billed 25.6 hours; Defendant first identified her, as "my colleague," on April 4, five days before withdrawing. Exs. F, H, R.

8. The statement reflects "[d]raft termination letter" on February 29 and March 1, 2024 — five weeks before the withdrawal, two weeks before the cease-and-desist letter, and five weeks before the forensic report the withdrawal letter cites as received "Thursday of last week." Ex. F. On April 8, 2024, Plaintiff Jennifer Osei wrote asking that the cease-and-desist be enforced "via court order while we work on this case," that he "find out which private investigators, pi firms and . . . security firms have assisted," and that a meeting be set. Decl. J.O. ¶ 10. On April 9, Defendant withdrew by letter. Am. Compl. ¶ 46; Ex. 35; ECF No. 101-2, Ex. D. On April 16, in response to Plaintiffs' refund request, he transmitted the statement showing a balance of $11,385: "our work vastly exceeds your initial retainer. This is yet another reason why there will be no refund." Ex. F-1. The withdrawal letter (a) states that harassment and stalking "are criminal in nature" and "require a showing that the Defendant purposely committed those acts 'beyond a reasonable doubt,'" Ex. D at 2; (b) devotes four of six pages to employer monitoring of employee telephones, computers, and workplaces, id. at 2–5; (c) states that "we were unsuccessful in obtaining the devices you had wished for our expert to review" and, in the same paragraph, that "any further computer forensic investigation would be needless," id. at 5; (d) reports that the examiner "found no spyware, malware or malicious content" on two devices but wrote that they "could have been compromised," id. at 6; (e) states that "no further action can be taken" and "our representation of you can go no further," id.; and (f) says nothing about any deadline, limitations period, administrative filing, election of remedies, or the client's file. Its own footnote recites that intrusion claims carry a two-year limitations period. Id. at 4 n.5.

9. Plaintiff Stephanie Osei filed with the New York City Commission on Human Rights on June 17, 2024 (Correspondence No. 1-1-8242198) and appeared at the EEOC in December 2024 without counsel. Am. Compl. ¶ 95; ECF No. 80-2 ¶¶ 51–52, Ex. S-19. Defendant refers to the administrative claim as one Plaintiffs "reportedly instituted," Def. Br. at 8; the filing and the agency's assignment of a case number are in the record. She has been unable to retain counsel since. ECF No. 88.

## ARGUMENT

### POINT I — THE STANDARD, AND THE LIMITS ON WHAT THE COURT MAY CONSIDER

On a Rule 12(b)(6) motion the Court accepts the well-pleaded factual allegations as true, draws reasonable inferences in the plaintiff's favor, and asks whether the complaint plausibly states a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Phillips v. County of Allegheny, 515 F.3d 224, 231–33 (3d Cir. 2008). Pro se pleadings are construed liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Dismissal is not warranted because the defendant disputes the facts, or because the defendant believes the plaintiff will be unable to prove them. The question is sufficiency, not proof.

Defendant correctly notes that the Court may consider a document "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). The rule has two limits he omits. First, the document must be "undisputedly authentic." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Second, the Court may consider the document for what it says — not for the truth of a defendant's own conclusions within it, and not as a substitute for the plaintiff's allegations. Where matters outside the pleadings are presented and not excluded, the motion "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

## POINT II — THE MOTION RESTS ON MATERIALS OUTSIDE THE PLEADINGS AND ON A CHARACTERIZATION OF THOSE MATERIALS THAT THEY DO NOT SUPPORT

**A. The retainer (Ex. C) is not integral, is not undisputedly authentic, and does not say what Defendant says it says.** The Amended Complaint does not attach, quote, or rely on a written retainer; it alleges the fact and date of retention and the purpose of the engagement. Am. Compl. ¶¶ 6, 12, 44, 93. The document Defendant attaches is unsigned, and his own email identifies it: "a first draft of a retainer agreement describing the scope of my potential representation," sent for review on December 17, 2023. Ex. B-2. Its "September 17, 2023" date is a month error — the first contact was December 1, 2023, Ex. 27 — and the draft was never executed in that form. His own December 20 email shows the fee and scope being set that day, and set more broadly than Exhibit C or his brief allows: an investigation "against your sister and you," to "connect the dots" back to Ms. Johnson. Ex. B-1. Plaintiffs told Defendant in writing on April 11, 2024 that the date was wrong; he did not correct it, and filed the draft anyway as "the Retainer." Ex. K. His firm holds the agreement Plaintiff actually signed, its receipt for the first installment, and its December 20 email setting the terms, and attached none of them. Exs. B, B-1. A first draft, circulated for comment and superseded by negotiated terms and an executed agreement, is not integral to the complaint and is not undisputedly authentic; it may not be considered on a Rule 12(b)(6) motion. White Consol., 998 F.2d at 1196. An unsigned document that is not the parties' agreement cannot establish the "explicit limited scope" of the engagement.

Even if considered, Exhibit C does not establish that scope. Def. Br. at 13. Its stated object is the client's "claim that . . . [LMDN] and others have breached May 2022 settlement

agreements" and "engaged in harassment, intimidation, stalking and bullying of you and family members." Ex. C at 1. A lawyer retained to determine whether an agreement has been breached must first determine what the agreement is. When his client told him in writing, within hours of his obtaining it, that its terms were not what she had agreed to, ECF No. 80-2, Ex. S-21, that question was not "entirely outside the scope of his retention," Def. Br. at 7, 12; it was the retention. And a retainer's scope defines the work promised, not the duties that attach to any representation: to keep the client reasonably informed, to explain matters sufficiently to permit informed decisions, and, upon withdrawal, to protect the client's interests, surrender her papers, and give notice of what remains to be done. N.J. R. Prof'l Conduct 1.4, 1.16(d).

**B. The "private investigator" who "independently" found the allegations "unsubstantiated" appears in neither the pleadings nor Defendant's exhibits.** Defendant tells the Court, three times and without citation, that "a private investigator who had been hired by Stephanie . . . concluded, based upon his own independent investigation, that Stephanie's allegations . . . were unsubstantiated." Def. Br. at 7, 11. His own letter identifies the person retained as "an expert in electronic data and extraction work, Mr. Robert Adams," who examined a laptop and a phone, "found no spyware, malware or malicious content," and wrote that the devices "could have been compromised." Ex. D at 2, 6. Those devices were Jennifer Osei's; no device belonging to Stephanie Osei — the client whose claims the letter pronounces unsupported — was ever examined, and a second set of devices, provided because of what Plaintiffs had observed on them and paid for separately, was never fully examined. Decl. J.O. ¶ 13; Decl. S.O. ¶ 16. Mr. Adams was selected by Defendant ("Mr. Adams is the person I've identified as the specialist best able to help," January 30, 2024, Ex. N-2 at 1); the engagement was Jennifer Osei's — her devices, her account, her meetings — his engagement letter names her alone, and

Stephanie Osei paid his fee on her behalf. Ex. N-1; Decl. J.O. ¶ 11; Decl. S.O. ¶ 16. "Hired by Stephanie" is accurate only as to who paid. His assessment, which Defendant does not attach, stated that Jennifer Osei's cloud account was most likely compromised. Decl. J.O. ¶ 13. A report that two devices show no presently detectable malware, with a finding that a cloud account was likely compromised, is not a private investigator's conclusion that a stalking claim is unsubstantiated; it is closer to the opposite. Nor did the examination address the concern Plaintiffs had described — access to their accounts — and it was never the investigation: how non-public information about Plaintiffs' household reached a third party in 2023, Am. Compl. ¶ 102, was the question he was retained to pursue. See Point III.C. The statement on which Defendant's breach and causation arguments both depend is unsupported by anything before the Court and contradicted by the exhibit he attached. It must be disregarded.

**C. The disengagement letter (Ex. D) is integral — the Amended Complaint attaches it as Exhibit 35 — but it is integral as a document, not as a finding.** Defendant asks the Court to accept the letter's conclusions ("the evidence does not support harassment, stalking, bullying, or privacy claims") as established. Def. Br. at 11–12. That inverts the standard. The letter is Defendant's own statement of his own work; its conclusions are precisely what the malpractice claim challenges. What the Court may properly take from the letter is what it shows on its face about how Defendant evaluated the matter and what he told, and did not tell, his client. That is addressed in Point III. One further point about the letter's premise. A client retains a lawyer because she cannot confirm for herself what she has observed. Plaintiffs brought Defendant their observations, the documents, and the explanations they thought possible, and asked him to determine which the evidence supported and how to find out. That was the engagement. That

some of what they brought him was unproven when it reached him is not a defense to the claim; it is the reason he was retained.

**D. If the Court is inclined to consider Exhibits C and D for their truth, or to credit the uncited "private investigator" assertion, Plaintiffs respectfully request that the Court give notice under Rule 12(d), convert the motion, and permit Plaintiffs to obtain, at a minimum, the signed engagement agreement, Defendant's file (which has not been returned), the Adams report and transmittals, and Defendant's time records for December 2023 through April 2024.** Fed. R. Civ. P. 12(d), 56(d). The declarations of Stephanie Osei and Jennifer Osei submitted herewith are limited to authenticating the documents cited, addressing the documents Defendant attached, and identifying the facts Plaintiffs would develop if the motion is converted.

## POINT III — CLAIM VIII STATES A CLAIM FOR LEGAL MALPRACTICE

**A. Claim VIII is asserted by Plaintiff Stephanie Osei alone.** Defendant devotes a page to the proposition that Jennifer Osei "never retained Farhi" and that the claim "must be dismissed as it pertains to Jennifer." Def. Br. at 6, 11. Claim VIII is captioned "Legal Malpractice (Plaintiff Stephanie Osei v. Defendant Michael Farhi, Esq.)" and is pleaded in her name only. Am. Compl. ¶¶ 93–95. There is nothing to dismiss. Plaintiffs note, however, that Defendant's own documents recorded the engagement otherwise. The first contact was hers (Ex. 27); the draft retainer described the representation as of "your sister, you and possib[ly] . . ." (Ex. B-2); the engagement was set as an investigation "against your sister and you" (Ex. B-1); the receipt was issued to both (Ex. B); the firm's billing system carries the matter under the client name "OSEI, Jennifer" (Ex. F at 1); every substantive email from Defendant was addressed to her, and his last ones open "Jennifer & Stephanie" (Exs. R, F-1); the only background check in the engagement was run on

both; and the household whose window and recorder were reported to him was hers. The statement that Defendant "never represented [Jennifer] in any capacity," Def. Br. at 6, is contradicted by his email, his receipt, and his billing records. If Jennifer Osei understood herself to be his client, it was because he told her so in every document he sent. An attorney-client relationship may arise from conduct, without a formal retainer, where the lawyer undertakes to act on a person's behalf and she reasonably relies on it; and a non-client the lawyer knows is relying on his advice is owed a duty of care. Herbert v. Haytaian, 292 N.J. Super. 426, 436–37 (App. Div. 1996); Petrillo v. Bachenberg, 139 N.J. 472, 483–84 (1995). Claim VIII does not plead that claim; Point VI asks leave to add it.

**B. The elements are pleaded.** Legal malpractice under New Jersey law requires (1) an attorney-client relationship creating a duty of care, (2) breach of that duty, and (3) proximate causation of damages. McGrogan v. Till, 167 N.J. 414, 425 (2001); Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996). Defendant concedes the relationship with Stephanie Osei. Def. Br. at 11. The dispute is breach and causation, and on both Defendant argues the merits rather than the pleading.

**C. Breach is pleaded with particularity, and Defendant's own exhibit supports it.** The Amended Complaint pleads ten specific acts and omissions. Am. Compl. ¶ 94(a)–(j). Those allegations are sufficient on their own, and the Court need look no further than the pleading to deny the motion. The documents cited below are offered because Defendant chose to place documents before the Court: if the Court considers his, Rule 12(d) entitles Plaintiffs to be heard on theirs; if it considers neither, the claim stands on the Amended Complaint. The documents are also the basis for the amendment Plaintiffs request in the alternative. See Point VI. Defendant's response is that he "undertook his representation of Stephanie entirely within, and even in a

manner that surpasses, the applicable standard of practice." Def. Br. at 11. That is a factual assertion, not a pleading argument, and it is not one the Court can resolve on this motion. But the Court need not take Plaintiffs' word for the breach. The disengagement letter Defendant attached shows, on its face, at least the following:

- He evaluated his client's civil claims under a criminal burden. The letter states that harassment and stalking "are criminal in nature" and "require a showing that the Defendant purposely committed those acts 'beyond a reasonable doubt,'" citing State v. Hoffman, 149 N.J. 564 (1997) — a criminal appeal. Ex. D at 2. New Jersey provides a civil cause of action for stalking, N.J.S.A. 2C:12-10.1, proved by a preponderance, and the common-law torts of intrusion upon seclusion and intentional infliction of emotional distress likewise carry the ordinary civil burden. A lawyer who tells his client that her civil claim fails because it cannot be proved beyond a reasonable doubt has not evaluated her civil claim.
- He analyzed the wrong body of law. Four of the letter's six pages address whether an employer may monitor an employee's telephone calls, computers, and workplace — the consent and "business extension" exceptions to the wiretap statutes, video surveillance of "common areas, classrooms, or hallways," and an employer's "legitimate right to investigate employees." Ex. D at 2–5. The client had not been employed by LMDN since early 2022. Her claim concerned conduct at her residences in New Jersey by persons unknown to her. The letter acknowledges the mismatch ("In this case, you are no longer working at LMDN") and then applies the employment analysis anyway. Id. at 5.
- He declared forensic examination "needless" in the same paragraph in which he conceded the devices had not been obtained. Id. at 5. The examiner who did look at two

devices wrote that they "could have been compromised." Id. at 6. The letter does not explain how an examination that was never completed can be known to be needless.

- He received the examiner's report "Thursday of last week," did not know it had already been supplied to his client, and withdrew the following week. Id. at 6. The Amended Complaint pleads a prolonged silence before withdrawal, Am. Compl. ¶¶ 46, 94(f); the statement fixes it: last call February 16, termination letter drafted February 29 and March 1, next call April 4. Ex. F. During that period the matter passed to an associate without the client being told; by the time that lawyer first wrote to the client, on March 25, she had billed 25.6 hours and drafted the termination letter, and Defendant introduced her by name on April 4, five days before the end. Exs. F, H, R. A client is entitled to know who is representing her, N.J. R. Prof'l Conduct 1.4(a)–(b), and the duty to explain a matter "to the extent reasonably necessary to permit the client to make informed decisions," RPC 1.4(b), is measured by the client. Plaintiff had disclosed her disabilities to Defendant and asked him to walk her through why the evidence was thought insufficient. Decl. S.O. ¶ 11. What she received was a six-page letter of case citations and no conversation; three in-person meetings took place, all concerning the Agreement, none the conduct or the evidence. For this client, a letter was not an explanation; it was a document.

- Four days before withdrawing, he identified the remedy and sent his client away from it. On April 5, 2024, Defendant wrote that the circumstances "do[] not . . . preclude a professional ethics or negligence claim against Ms. Joseph if she, in fact, did not advocate for your position, or 'switched the signature pages' to make it appear that you signed a version of the agreement that you did not approve," adding that these "serious allegations" "would require handling by an attorney specializing in that field." Ex. R. He named the claim and

gave no referral, no limitations period, and no next step. In the same email he wrote that Plaintiff's communications with Ms. Joseph about the terms she wanted "are irrelevant if you subsequently signed a form of agreement that did not include them" — disregarding what he had been told from the first week, that she signed signature pages without the document they were attached to, Am. Compl. ¶ 45; ECF No. 80-2 ¶¶ 17–18, 28, and what Ms. Joseph had told him on January 11, that the agreement had never been fully executed, Ex. B-5 — and he conditioned any contract claim on finding a signed copy "on your laptop computer," when the documents were in prior counsel's office, from which he had never compelled them. Ex. R. He closed: "We can speak again next week." The withdrawal letter is dated April 9. There was no further call.

- He withdrew without advising of any deadline, limitations period, pending or available administrative remedy, election of remedies, or the client's right to her file; his firm had billed 3.8 hours to draft the termination letter on February 29 and March 1, 2024 — before the cease-and-desist letter was drafted, approved, and mailed (March 14–26), and before the forensic report his withdrawal letter relies on had arrived, Ex. F; when LMDN's counsel answered the cease-and-desist with a demand to litigate in court and a threat of sanctions, the firm forwarded it with the words "Please be guided accordingly" and nothing else, Ex. Q; and when asked for a refund he sent, a week after withdrawing, a statement for $16,385 and the sentence "there will be no refund." Ex. F-1. Ex. D passim; Am. Compl. ¶¶ 46, 94(d), (g). The letter's own footnote recites a two-year limitations period for the very claim it discusses. Ex. D at 4 n.5 (citing Piscopo v. Pub. Serv. Elec. & Gas Co., 2014 WL 3014284 (D.N.J. 2014)). The client was not told that the period was running, or when it would run out.

- He did not advise his client that the release of her wage claims was unenforceable, or that those claims remained open. The settlement was executed as two documents — a "Settlement Agreement and General Release of All FLSA Claims" and a Non-FLSA Agreement — privately, through JAMS, with no Department of Labor supervision and no court approval. Am. Compl. Ex. 32 (ECF No. 61-13). A private release of FLSA claims without one of those safeguards is unenforceable. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352–55 (11th Cir. 1982); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Davis v. Essex County, No. 14-cv-1122, Dkt. 90 (D.N.J. Dec. 1, 2015); Brumley v. Camin Cargo Control, Inc., 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012); see Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (FLSA rights "cannot be modified by contract"). Plaintiff's position was non-exempt by LMDN's own renewal letter, ECF No. 80-2, Ex. S-1; she had raised unpaid after-hours work in her December 21, 2021 report, id. ¶ 8; and the Non-FLSA Agreement recites that she had "received all sums due to her under the federal Fair Labor Standards Act." Am. Compl. Ex. 32. The FLSA period is two years, three for willful violations, accruing with each paycheck, 29 U.S.C. § 255(a); from Plaintiff's last pay in January 2022 the willful period ran into early 2025 — open on every day of the engagement and for eight months after he withdrew. He said nothing about it.

- He sent the adversary's counsel the same letter he sent the client's. On December 17, 2023 — the day of the "first draft" retainer, before the fee was set or the Agreement received — Defendant sent two letters on firm letterhead, identical in every word: one to Ms. Joseph, Plaintiff's former counsel, and one to Joanne Romero, Esq., of Goldberg Segalla, who had represented LMDN. Each stated, "I am investigating on behalf of Stephanie Osei

breaches of a settlement agreement or agreements in the above matter," and requested "a true copy of the fully executed agreement(s)" and the submissions to the mediator. Exs. B-4, B-5. The Romero copy went at 12:10 p.m. "in a matter in which you represented her"; at 2:23 p.m. Jennifer Osei wrote, "just making sure Bemitta Joseph represented my sister in the settlement. Mrs Romero represented LMDN"; he replied, "Yes. Thank you." Exs. B-4, B-2 at 17. The adversary's counsel had been told, before any record was sought, that a breach investigation was under way, and asked for the client's own mediation submissions. No response came; none was pursued; no correction was sent; and the bill — which records 0.2-hour entries for reading a single client email — contains no entry for either letter or for December 17 at all. Ex. F. The "breaches" he announced to both sides were never raised with either: by December 22 he had Plaintiff's objections to the agreement, Ex. B-3; by January 11, Ms. Joseph's statement that it had never been fully executed, Ex. B-5; by January, Plaintiff's question whether she could still report, Ex. P; and the wage-claim release was void on its face. When his firm finally sent a letter, it was a cease-and-desist about conduct, addressed to Ms. Johnson, LMDN, and Mr. Hewitt — not to the counsel he had written — and it said nothing about the agreement. Ex. H.

- He did not investigate the one fact that called for investigation. The document Defendant offers as the engagement describes its object as an investigation to "trace back" the actions complained of to those responsible. Ex. C at 2. The file he received in December 2023 contained a 2023 report to child protective services concerning Plaintiff Jennifer Osei's household that reflected non-public knowledge of its composition and was closed as unfounded, Am. Compl. ¶ 102 & Ex. 26 — someone had information that was not public, and who had it was the question the engagement existed to answer. It also contained, from

December 16, 2023, the itemized submission to the Middlesex County Prosecutor's Office naming David F. De Palma — a licensed private investigator with a name, a license, and a regulator — on video at Plaintiff's residence, with the date and image references. Am. Compl. ¶ 29, Exs. 17–18; Ex. B-2 at 1; Ex. E. He was the one identified, traceable person in the file. Defendant sought nothing from him, nothing about him, and nothing from the agency that licenses him. The only background check in the engagement was run, at Plaintiffs' request, on Plaintiffs themselves; none was run on Ms. Johnson, Mr. De Palma, or anyone observed at Plaintiffs' residences. Decl. J.O. ¶ 14. On April 8, 2024, Plaintiff Jennifer Osei asked Defendant in writing to "find out which private investigators, pi firms and . . . security firms have assisted." His statement bills 0.2 hours that day to "[r]eview client email"; he withdrew the following day. Decl. J.O. ¶ 10; Ex. F.

- What the letter calls a "full and lengthy review of the facts and the photographic and video evidence," Ex. D at 5, and "diligently indexing," id. at 2, was intake: the firm's work product on the evidence was a spreadsheet of questions for Plaintiff to answer about her own footage and her own prosecutor submission, which she completed by hand and handed to Defendant on March 19, 2024. Ex. E; Decl. S.O. ¶ 10. Her answers drew no response. Id. Jennifer Osei asked whether she could send the explanations she was considering; he said yes; she did; nothing ever addressed them. The letter identifies no incident by date and omits the February 2024 report — footprints at the residence and leading to a child's bedroom window, the disabled recorder — which Plaintiffs sent while he was retained, to which he did not respond, and on which he gave no advice about reporting or preservation while his firm was drafting its termination letter, so that Plaintiffs, awaiting counsel's direction, did not make a police report until after he withdrew. Am. Compl. ¶¶ 36, 94(i), 101; Exs. F, S; Decl.

J.O. ¶¶ 8–9. The statement bills twenty-three entries by Defendant to "[r]eview client email," dated January 21 through April 8, bearing slip numbers 148850 through 148873 in unbroken sequence — higher than his entries for April 4 (148759) and April 5 (148763) — indicating they were recorded after April 5 and dated back; it is stamped as a pre-bill worksheet generated April 16, 2024, five days after Plaintiffs' refund request. Ex. F at 7; Ex. K. In 43 hours it contains no entry for legal research, a records request, any inquiry concerning Mr. De Palma or Ms. Johnson, or any analysis of the Agreement by Defendant himself. Id. Review that leaves no trace in the work is indistinguishable from no review at all.

- The examination he arranged was aimed at the wrong question. On January 9, 2024, he wrote that he would "look for a forensic IT person as our next step." Ex. P. On January 30 he supplied Mr. Adams — "the person I've identified" — with whom he had worked before. Ex. N-2 at 1. The concern Plaintiffs had described to him — by email on February 1, 2024, and again with video on February 15 and 16 — was remote access to their accounts and devices. The examiner asked, in writing, for "the nature of the suspected activity in both cases," "possible suspects," and "what type of cyber harassment has occurred"; Defendant told Plaintiffs to "just answer those 2 simple questions" about devices and operating systems and said he would "send him the other information"; Plaintiffs' reply to the remaining questions reads, "Mr. Farhi has this particular information." Ex. N-2. The examination that followed was scoped to malware on two devices, neither the client's, and the letter does not state that the concern described was examined at all. Decl. J.O. ¶¶ 12–13. The finding that mattered — that a cloud account was likely compromised — concerns access, which a malware scan does not detect and which the letter does not mention. Id. A report of account access calls for steps that do not depend on the devices: records from their

sources, the providers' sign-in histories, a separate channel for privileged communications, an examination scoped to access. The statement reflects none. Ex. F. Defendant knew what the engagement was: his retainer records that the client had "likened these actions to the eBay Stalking Scandal," Ex. C at 1, and his letter discusses Steiner v. eBay by name, Ex. D at 5. In Steiner the link between the conduct and the company was established by records obtained through process — executives' messages, travel records, charges on a contractor-issued card. Steiner v. eBay Inc., No. 1:21-cv-11181-PBS, Dkt. 711, at 4–8, 27, 31–32 (D. Mass. Aug. 12, 2025). The letter calls Plaintiffs' evidence "inconclusive" as to who was responsible and stops. Ex. D at 5–6. Inconclusive evidence of responsibility is the reason an investigation is retained, not a reason to close it; from "no spyware on two devices" the letter reasons to "no evidence whatsoever to 'connect' any acts," id. at 6, which is not the result of an investigation but the absence of one. Nine days after he withdrew, LMDN's counsel wrote that "[w]ithout these details, Little Missionary's cannot respond further or investigate your client's claims." Ex. J at 1. Those denials are of knowledge and of Ms. Johnson's own conduct — a statement of what someone knows is not a statement of what is happening, and a denial of "stalking" is a denial of a label; whether conduct is intrusion turns on what was done, not on what the actor called it. The details were what Defendant had been retained to obtain, and his client had asked him for them in writing the day before he left. On this record no one with the means to investigate did so, and the one person paid to do it is the one who says the claims were unsubstantiated.

- He was asked, in writing, the question at the center of this case, and did not answer it. On January 8 and 9, 2024, Plaintiff Jennifer Osei asked Defendant whether the Agreement barred her sister from reporting: “Can she still blow the whistle to the parents of

the school … since she would be reporting a crime"; "the parents of the school have a right to know what's happening to there kids without Steph losing the settlement money"; and, attaching a statute, "Would this apply to her?" Ex. P. Defendant's only written response addressed the money: he "would obviously not want your sister to have to return her settlement money by having the entire agreement voided," though "the objectionable or illegal terms could be removed by a court." Id. He did not tell his client — a mandated reporter under N.Y. Soc. Serv. Law § 413 — that her duty to report suspected abuse or maltreatment is imposed by statute and cannot be waived by private agreement; that the Agreement itself names the agencies to which she could report; or that a confidentiality clause cannot lawfully restrain the report of a crime. On the telephone call that followed, on January 15, 2024, his answer on reporting was the same: that Stephanie would not have to give back her money. Decl. S.O. ¶ 9; Decl. J.O. ¶ 16. He recognized that the Agreement contained "illegal terms" and advised her of nothing, in writing or by phone, except the risk to her payment.

- He flagged a provision of the Settlement Agreement as a "term of possible concern," was told in writing by his client that the document did not reflect what she had agreed to — a lack of mutual assent in a client's words; she had signed signature pages alone, on prior counsel's instruction, ECF No. 80-2 ¶ 28 — and observed himself that "[t]he first and second agreements do not show your e-signature," that "[w]e need to have a conversation," and that he would obtain "all documents signed by you." Ex. B-3. The agreement also purported to release FLSA wage claims — a release invalid without Department of Labor supervision or court approval, see supra — which Plaintiff, unrepresented at signing, did not know was unenforceable. An employee's release of

employment claims must be knowing and voluntary, judged on the totality of the circumstances, including her understanding of the terms and whether she had counsel. Cirillo v. ARCO Chem. Co., 862 F.2d 448, 451 (3d Cir. 1988) (citing Coventry v. U.S. Steel Corp., 856 F.2d 514, 523 (3d Cir. 1988)). A document presenting a void term as binding to an unrepresented signer is evidence on that question; it was in Defendant's hands in December 2023 with his client's statement that it did not reflect her agreement, and he raised neither. The conversation did not occur. The documents were requested once more, on January 11, 2024, and the answer from the lawyer who had handled the signing was that "the agreements were signed separately" and Plaintiff still "has to . . . sign the agreement for it to be fully executed." Ex. B-5. That was the formation question in prior counsel's own words, and it went nowhere: no follow-up, no inquiry to LMDN, no word to the client; on April 5 he wrote that her communications about the terms were "irrelevant if you subsequently signed a form of agreement that did not include them" — the premise he had found unsupported on December 22 and Ms. Joseph had contradicted on January 11. Ex. R. He never advised her what the provision meant, whether it was enforceable, or what she could do about it, Am. Compl. ¶¶ 45, 94(a)–(d), nor what the Agreement still permitted — reports to the agencies it names, her obligations as a mandated reporter, claims on new conduct, a challenge to the provisions themselves. Nor did he examine the document for what corroborated her: an FLSA release with no court approval; releases of rights that cannot be waived; confidentiality terms sitting on a mandated-reporter obligation; and the pre-signing Term Sheet and Acknowledgment Form, never obtained despite his December 22 undertaking. Am. Compl. ¶ 45. Those are the things a lawyer examining formation finds in an afternoon. The client raised assent; the document corroborated her; he looked at neither.

Defendant describes these allegations as "purported dissatisfaction," an investigation "not to their liking," communication "not as frequently as she would have hoped," and "baseless." Def. Br. at 7, 12. Each omission above is pleaded with a date and a document, and several are established by his own exhibit. Whether the client was satisfied is not the question; whether the lawyer did what he was retained to do is. A lawyer's duty to keep the client reasonably informed and to explain matters sufficiently to permit informed decisions is the floor of the relationship, not a matter of discretion. N.J. R. Prof'l Conduct 1.4. Whether the standard of care was met is a question of fact, not resolved by the lawyer's own assertion that he exceeded it.

Taken in order, Defendant's own documents describe the engagement he conducted. On the first day he had the name of a licensed investigator on video at the client's door and sent, instead, the same form letter to the client's former counsel and to the adversary's, announcing a breach investigation he then never pursued. He flagged the agreement, was told by prior counsel in January that it had never been fully executed, and never raised it with anyone. He said he would find a forensic examiner and supplied a colleague, whose examination was confined to malware on devices that were not the client's. He assigned the matter to an associate admitted six weeks earlier, who drafted his withdrawal on February 29 and his cease-and-desist in March, with no entry showing he reviewed either and no word to the client that she existed. He billed to read the email asking him to enforce the letter and identify the investigators, and withdrew the next day, in a letter that reports a conclusion the examiner did not reach and omits the one he did. The statement of 43 hours contains no inquiry, no request, no research, and no record of the investigation he was retained to conduct. That is the breach pleaded in Claim VIII, and it is pleaded with the particularity his motion says is missing.

**D. Proximate cause and damages are pleaded.** Defendant's causation argument has three parts. None warrants dismissal.

First, Defendant argues that the EEOC appearance in December 2024 was "outside the scope" of the retainer and too remote. Def. Br. at 12–14. The Amended Complaint does not plead that Defendant was retained to represent Plaintiff at the EEOC. It pleads that he withdrew "without advising Plaintiff of her election rights," and that but for that omission she "would have pursued those remedies while the window was still open." Am. Compl. ¶ 95. The duty to tell a client, on withdrawal, what deadlines and remedies remain is not a function of what the retainer covered; it attaches to the withdrawal itself. N.J. R. Prof'l Conduct 1.16(d). A lawyer who takes on a matter concerning a former employer's settlement agreement and the client's "underlying employment claims," Am. Compl. ¶ 12, and then withdraws without a word about the administrative and limitations clocks running on those claims, has left the client exactly where the Amended Complaint says she was left.

Second, the EEOC allegation is one of the damages pleaded, not the only one. Defendant was retained in December 2023, obtained the Agreement on December 22, and remained counsel until April 9, 2024. Am. Compl. ¶¶ 44–46. LMDN's own documents fix the end of Plaintiff's employment at April 4, 2022: its COBRA notice identifies the qualifying event as "end of employment" on that date, and the Agreement recites that coverage "was lawfully terminated on April 4, 2022." ECF No. 80-2 ¶¶ 20–21 & Ex. S-22; Am. Compl. Ex. 32 ¶ 7(c). Plaintiff's whistleblower retaliation claim under N.Y. Labor Law § 740 carries a two-year period, § 740(4)(a) (as amended eff. Jan. 26, 2022), which, absent tolling, ran from the date LMDN itself chose to April 4, 2024. Defendant had the Agreement and the date from December 22, 2023; he withdrew on April 9, 2024, five days after the period closed, without mentioning it. The intrusion

claims arising from the August 31, 2022 incident, Am. Compl. ¶ 29, carried the two-year period his own letter recites, Ex. D at 4 n.5, and, absent tolling, expired August 31, 2024 — four and a half months after he withdrew. Plaintiff's FLSA claim, never validly released, remained open into early 2025 and was never asserted, because the client whose lawyer held the documents was never told it existed. ECF No. 80-2 ¶ 45 & Ex. S-12. Plaintiff paid the firm $5,000 for an evaluation that applied a criminal burden to civil claims and workplace-monitoring law to post-employment conduct; Defendant had told Plaintiffs, in person, that he would pause and notify them when the work approached the second $5,000. Decl. S.O. ¶ 12. The statement shows the $5,000 exhausted by January 29, 2024, no interim bill, and $11,385 billed thereafter without notice; on April 11 Plaintiffs requested in writing a refund of the unearned fee, the mailing confirmation for the cease-and-desist, all correspondence with opposing counsel, and "the names of any businesses helping opposing counsel with discovery," and on April 16 received the statement and the sentence "there will be no refund." Exs. K, F, F-1. A lawyer who withdraws must refund any unearned advance fee. N.J. R. Prof'l Conduct 1.16(d). "Ordinarily, an attorney may not collect attorney fees for services negligently performed," and the fees and expenses a former client incurs as a result of the malpractice are consequential damages. Saffer v. Willoughby, 143 N.J. 256, 272 (1996). Mr. Adams's fee was paid separately. Decl. S.O. ¶ 16. Those are damages proximately caused by the breaches pleaded. The "case within a case" is dated and concrete.

Plaintiffs plead these limitations consequences in the alternative, as Rule 8(d)(2) permits. In opposing LMDN's motion, Plaintiffs have maintained that their claims against LMDN are timely under the discovery rule and because the executed Agreement was withheld until December 22, 2023 and the Term Sheet and Acknowledgment Form until September 2025. ECF

No. 80. Plaintiffs stand on that position; the diligence it rests on is pleaded — counsel retained to trace the conduct, reports to the prosecutor and the Commission, the request for appointed counsel. Am. Compl. ¶¶ 44, 46, 102; ECF No. 88. A limitations defense may be resolved on a Rule 12(b)(6) motion only where the bar is apparent on the face of the complaint, Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014), and whether tolling applies is a question the Court has not decided; and Defendant was retained precisely because the clocks were uncertain: he had the Agreement, the separation date, and the incident dates by December 22, 2023, and told his client nothing about any of them. To the extent the Court holds any underlying claim time-barred, the loss of that claim is damage proximately caused by that omission; to the extent the claims survive, the damages are the fees paid, the time lost, the cost of proceeding without counsel, and the delay in reporting the February 2024 incident. On either branch the element is pleaded. A plaintiff need not concede one defendant's limitations defense to plead the consequences of another defendant's negligence. Fed. R. Civ. P. 8(d)(2)–(3).

Third, Defendant argues that "Plaintiffs' institution of this litigation is itself incontrovertible proof that they have suffered no damages," because Plaintiff "would have still pursued" her claims regardless. Def. Br. at 16. No authority is cited for the proposition, and none exists. A client who is left to pursue her claims pro se, after the limitations period on some of them has run and after paying a lawyer to evaluate them under the wrong standard, has not thereby proved that the lawyer caused her no harm. She has proved the opposite. The argument also assumes the very fact in dispute — that Defendant's evaluation was correct and the claims were worthless — and then reasons from that assumption to the conclusion that nothing was lost. That is a merits defense, to be tried; it is not a ground for dismissal.

**E. Defendant does not raise the Affidavit of Merit, and the period has not begun.** The affidavit is due within 60 days after the defendant's answer, extendable to 120; Defendant has not answered. N.J.S.A. 2A:53A-27; Chamberlain v. Giampapa, 210 F.3d 154, 158–61 (3d Cir. 2000). Plaintiffs note the point to preserve it, and request the case-management conference the statute contemplates when the period begins. Plaintiffs will comply or invoke the common-knowledge exception as to omissions a lay juror can evaluate without expert testimony — failure to advise of deadlines on withdrawal, a termination letter drafted in secret followed by seven weeks of silence, a criminal burden applied to a civil claim. Hubbard v. Reed, 168 N.J. 387, 394–95 (2001).

## POINT IV — CLAIM IX STATES A CLAIM AGAINST DEFENDANT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; IN THE ALTERNATIVE, LEAVE TO REPLEAD AS BREACH OF FIDUCIARY DUTY

Claim IX alleges, independently of the John Doe conduct, that Defendant's own acts — failing to respond when Plaintiffs reported footprints leading to a child's bedroom window and a disabled security recorder, ceasing communication for seven weeks during that period while his firm drafted the termination letter, and withdrawing without returning the file or advising of deadlines "at the precise moment they needed to navigate federal administrative proceedings" — constitute intentional infliction of emotional distress. Am. Compl. ¶ 101. Defendant calls the February 2024 report a "purported report of a suspicious person." Def. Br. at 18. It is pleaded with the recording and the police response. Am. Compl. ¶ 36, Ex. 24. Defendant argues the conduct is not "extreme and outrageous" and the distress not "severe." Def. Br. at 16–18.

Plaintiffs acknowledge that the Buckley standard is demanding. Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988). But the question whether conduct is sufficiently outrageous is, in the first instance, for the Court only where reasonable minds could not differ;

and the context here is a fiduciary who knew his client's circumstances, knew she was reporting threats to a child in the household, and did not respond. Conduct that would be merely unkind between strangers may be outrageous where the actor holds a position of trust and knows of the plaintiff's particular vulnerability. Restatement (Second) of Torts § 46 cmt. e; Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988) (adopting § 46). Severity is pleaded. Am. Compl. ¶ 101.

In the alternative, should the Court find Claim IX insufficient as to Defendant, Plaintiffs request leave to replead the same facts as a claim for breach of fiduciary duty. An attorney owes the client duties of loyalty, candor, and diligence that are independent of the duty of care and are not displaced by the malpractice claim. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443 (2001) (breach of fiduciary duty by an attorney may be prosecuted "as an independent tort"). The facts pleaded in ¶ 101 — silence in the face of a reported threat, seven weeks without communication while retained and while the termination letter was being drafted, withdrawal without return of the file — state that claim regardless of whether they meet the Buckley threshold.

## POINT V — THE OTHER CAUSES OF ACTION LISTED IN THE TITLE OF CLAIM IX ARE NOT ASSERTED AGAINST DEFENDANT, AS THE CLAIM ITSELF STATES

Defendant argues that Claim IX engages in "improper group pleading" because its title lists several torts alongside intentional infliction of emotional distress, and then correctly reads the claim: "the only count among these as to which Plaintiffs intend to include Farhi is that sounding in intentional infliction of emotional distress." Def. Br. at 20. That is what Claim IX says — the other torts are asserted against the John Doe and ABC Company defendants, and the claim against Defendants Joseph and Farhi is for intentional infliction "based on [their] own

direct conduct." Am. Compl. ¶¶ 96, 101. Plaintiffs confirm it here; there is nothing to dismiss, and if the Court prefers the caption to say so expressly, Plaintiffs will conform it on amendment.

## POINT VI — DISMISSAL WITH PREJUDICE IS NOT WARRANTED; THE MAY 27, 2026 ORDER DOES NOT FORECLOSE AMENDMENT

Defendant asks for dismissal with prejudice on two grounds: that amendment would be futile, and that the May 27, 2026 Order (ECF No. 60) "required" a "final, all-encompassing pleading." Def. Br. at 6, 21–22.

**A. The May 27 Order.** The Order addressed a specific problem — a proposed pleading whose caption, parties section, and signature block did not agree on who the plaintiffs were — and granted leave to file "a single, all-inclusive amended pleading that properly identifies all parties and contains all claims Plaintiff(s) wish to assert." ECF No. 60 at 2. Plaintiffs did so on June 16, 2026. The Order set a deadline for that pleading; it did not purport to suspend Rule 15(a)(2) for the remainder of the case, and nothing in it addresses the sufficiency of any claim against Defendant Farhi, whose first substantive motion is this one. The Third Circuit requires that a plaintiff be given leave to amend a deficient complaint "unless an amendment would be inequitable or futile," and that this be done "irrespective of whether it is requested." Phillips, 515 F.3d at 245 (quoting Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). A scheduling order fixing the date for one amendment is not a finding that every later amendment is inequitable. Defendant describes Plaintiffs as "having already filed multiple pleadings, with various 'letter amendments' along the way." Def. Br. at 22. The May 27 Order describes that sequence and resolved it by directing a single amended pleading, which Plaintiffs filed on time. This is the first motion directed to any claim against Defendant.

**B. Futility.** Futility means that "the complaint, as amended, would fail to state a claim." In re Merck & Co. Sec., Derivative & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007).

Defendant does not identify any respect in which the facts could not be pleaded more fully; he argues that his conduct was proper, which is a defense, not a futility showing. Should the Court find any element insufficiently pleaded, Plaintiffs request leave to amend to add, as to Defendant: his failure to advise that the Agreement's confidentiality provisions could not restrict Plaintiff's obligations as a mandated reporter, N.Y. Soc. Serv. Law § 413; his failure to advise of the limitations periods on the claims he was retained to evaluate, including the two-year period his own letter recites, and of the administrative remedies and their time limits; his failure on withdrawal to return the file or advise of the right to it, RPC 1.16(d); his failure to advise of the significance of LMDN counsel's April 18, 2024 letter — a demand to litigate in court and a threat of sanctions — forwarded with "Please be guided accordingly" and nothing else; his evaluation of civil claims under a criminal burden; the $5,000 paid, the absence of any accounting, and the refusal to refund the unearned portion, RPC 1.5, 1.15, 1.16(d); his failure to advise that the private FLSA release was unenforceable and the claims open; breach of fiduciary duty on the facts in ¶ 101 and above; a claim by Jennifer Osei, pleaded in the alternative as breach of an attorney-client relationship formed by conduct and as negligence toward a known relier, Petrillo, 139 N.J. at 483–84, on the record set out in Point III.A; and the law firm, Kates Nussman Ellis Farhi & Earle, LLP (now Kates Nussman Ellis Earle & Landolfi, LLP), vicariously for the acts of Defendant and the associate who billed 27.9 of the 43 hours and directly for the partners' supervisory duties under RPC 5.1. No court has ruled on the sufficiency of any claim against Defendant Farhi; this is the first motion directed to them. Amendment is neither inequitable nor futile.

## POINT VII — ORAL ARGUMENT

Defendant has requested oral argument. ECF No. 101 at 2. The Clerk's notice states that the motion will be decided on the papers. Plaintiffs respectfully submit that the motion can and should be decided on the papers, and ask that it be. L. Civ. R. 78.1(b). Should the Court nonetheless direct argument, Plaintiffs ask to be heard.

## CONCLUSION

Plaintiffs respectfully request that Defendant Farhi's motion be denied in its entirety. In the alternative, Plaintiffs request that (1) any dismissal be without prejudice; (2) Plaintiffs be granted leave to amend as set out in Points IV and VI; and (3) to the extent the Court considers Exhibits C and D for their truth or credits Defendant's uncited assertion regarding a "private investigator," the Court proceed under Rule 12(d) and afford Plaintiffs the opportunity described in Point II.D. Plaintiffs note that their motion for appointment of pro bono counsel (ECF No. 88) remains pending; the record of this engagement — the second in which counsel retained to protect Plaintiffs' interests did not — is among the reasons it was made.

Dated: 11/20, 2026
Respectfully submitted,

Stephanie Osei

Stephanie Osei, Plaintiff Pro Se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

Jennifer Osei

Jennifer Osei, Plaintiff Pro Se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

## CERTIFICATE OF SERVICE

I certify that on November 20, 2026, I caused the following documents to be filed with the Clerk of the Court through the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record, and served by email on the counsel listed below: (1) Plaintiffs' Memorandum of Law in Opposition to Defendant Michael Farhi, Esq.'s Motion to Dismiss (ECF No. 101); (2) Appendix A (Chronology); (3) the Index of Exhibits; (4) the Declaration of Stephanie Osei with Exhibits B, B-3, E, H, J, P, Q, and R; (5) the Declaration of Jennifer Osei with Exhibits B-1, B-2, B-4, B-5, F, F-1, K, N-1, N-2, and S; and (6) this Certificate of Service.

**Counsel served:**

Meredith Kaplan Stoma, Esq., Lewis Brisbois Bisgaard & Smith LLP, One Riverfront Plaza, Suite 800, Newark, New Jersey 07102 — counsel for Defendant Michael Farhi, Esq.

John J. Byrnes, Esq., Milber Makris Plousadis & Seiden, LLP — counsel for Defendant Little Missionary Day Nursery.

Michael D. Celentano, Esq. and Michael J. Marone, Esq., McElroy, Deutsch, Mulvaney & Carpenter, LLP — counsel for Defendant Joanne J. Romero, Esq. (dismissed without prejudice, ECF No. 99).

Defendant Bennitta L. Joseph, Esq. has not appeared, and no counsel has entered an appearance on her behalf; Plaintiffs' motion for alternative service upon her remains pending.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 20, 2026

Stephanie Osei
Stephanie Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

Jennifer Osei
Jennifer Osei, Plaintiff pro se
120 Grand Avenue, P.O. Box 7105
Hackettstown, New Jersey 07840
jennifer.a.osei@gmail.com

Osei v. Little Missionary Day Nursery, et al., No. 3:25-cv-11991-MAS-JTQ (D.N.J.)

**APPENDIX A TO PLAINTIFFS' OPPOSITION TO DEFENDANT FARHI'S MOTION TO DISMISS (ECF No. 101)**

**CHRONOLOGY OF RECORD FACTS**

*Each entry is drawn from a document already on the docket or attached to the accompanying declarations. Entries marked ◆ are taken from Defendant Farhi's own exhibits (ECF No. 101-2).*

| Date | Event | Record source |
|---|---|---|
| Dec. 21, 2021 | Stephanie Osei sends written internal report to LMDN Board President and board member (financial misconduct, discrimination, child-welfare concerns, unpaid after-hours work, two handbook versions). Board President replies same day: "I recommend you separate yourself from the school at this time." | ECF 80-2 ¶¶ 37–39, Exs. S-7, S-8 |
| Dec. 31, 2021 | LMDN Director emails that "the Chairperson feels it is best if you separate yourself"; email and portal access cut off. | ECF 80-2 ¶¶ 41, 48, Exs. S-9, S-14 |
| Feb. 1, 2022 | LMDN letter: position "held open," Plaintiff "treated as being on paid leave," directed to return by Feb. 8, 2022. | ECF 80-2 ¶ 46, Ex. S-13 |
| Apr. 4, 2022 | End of employment per LMDN's own COBRA notice ("end of employment," event date Apr. 4, 2022) and per Settlement Agreement ¶ 7(c) (coverage "lawfully terminated on April 4, 2022"). | ECF 80-2 ¶¶ 20–21, Ex. S-22; Am. Compl. Ex. 32 ¶ 7(c) |
| May 4–6, 2022 | Acknowledgment Form (May 4); Term Sheet; Plaintiff signs signature pages of final Agreement in New Jersey (May 6). Settlement split into FLSA and Non-FLSA documents; administered by JAMS; no court approval or DOL supervision. | ECF 80-2 ¶¶ 14–18, 22–23; Am. Compl. Exs. 32–34; ECF 61-13 |
| Aug. 31, 2022 | Licensed private investigator (De Palma) at Plaintiff's residence, Old Bridge, N.J.; false-summons statement to neighbor. Two-year intrusion period runs to Aug. 31, 2024. | Am. Compl. ¶¶ 29, 97(1), Exs. 17–18 |
| Nov. 17, 2022 | Police report, Old Bridge, N.J. | ECF 80-2 ¶ 51 |
| Dec. 30, 2022 | Stephanie Osei submits an itemized, dated incident report with Ring footage to the Middlesex County Prosecutor's Office and Old Bridge Internal Affairs (Case #22050359), naming D. De Palma (Aug. 31, 2022) among others. | Ex. B-2 at 1 (Dec. 16, 2023 forward) |
| Dec. 2022 | Stephanie Osei moves into Jennifer Osei's household. | ECF 80-2 ¶ 29 |
| Jan. 6, 2023 | Follow-up to the Prosecutor and Internal Affairs: | Ex. B-2 (thread) |

| | | |
|---|---|---|
| | "Matters have worsened and my family and myself are very unsafe." No response. | |
| 2023 | Report to child protective services concerning Jennifer Osei's household reflecting non-public information about its composition; investigated and closed as unfounded. (Second report: Oct. 2024, post-withdrawal — not in this brief.) | Am. Compl. ¶ 102 & Ex. 26 |
| Dec. 1, 2023 | Jennifer Osei speaks with Farhi by telephone; Farhi emails her the same day: "It was a pleasure speaking with you today about your sister Stephanie's situation. Please send me her settlement agreement…" First contact between Plaintiffs and Farhi's firm. | Am. Compl. ¶ 44, Ex. 27 |
| Dec. 6, 2023 | Prior counsel Joseph states in writing that she does not possess the executed Settlement Agreement. | Am. Compl. ¶ 72, Ex. 28 |
| Dec. 16, 2023 | Jennifer Osei forwards the Prosecutor/IA submissions and footage to Farhi; Farhi acknowledges receipt ("will get back to you early next [week]"). | Ex. B-2 (thread) |
| Dec. 17, 2023 | Farhi emails Jennifer Osei "a first draft of a retainer agreement describing the scope of my potential representation of your sister, you and possib[ly] . . ." for review ("Retainer Agreement.doc" — the document later filed as Ex. C, dated "September 17, 2023" in evident error). Jennifer replies they will review it and set up in the following weeks; sends the new Mansfield address. | Ex. B-2; ECF 101-2 pp. 83–85 |
| Dec. 17, 2023 | Defendant signs two identical "Letter to Prior Counsel" letters — to Joseph (Plaintiff's former counsel) and to Romero (LMDN's settlement counsel): "investigating… breaches of a settlement agreement"; requests executed agreement(s) and mediator submissions. 12:10 p.m. Romero copy emailed ("in a matter in which you represented her"). 2:23 p.m. Jennifer: Joseph represented Stephanie; Romero represented LMDN. 2:28 p.m. "Yes. Thank you." No response from Romero; no follow-up. | Exs. B-4, B-5; Ex. B-2 at 17 |
| Dec. 18–21, 2023 | Paralegal transmits the letter to Joseph (Dec. 18); follows up (Dec. 20). Dec. 21: Joseph — "I already emailed everything to Ms. Osei"; will forward her emails; texts Stephanie for authorization. Farhi to Jennifer: "Please call me." | Ex. B-5 |
| Dec. 20, 2023 | Farhi sets the engagement in writing to Jennifer Osei: | Ex. B-1 (Decl. J.O.) |

| | | |
|---|---|---|
| | "oversee an investigation of the harassment and stalking against your sister and you, to acquire proof of that and to 'connect the dots' back to Ms. Johnson"; fee $10,000 "in 2 installments"; Jennifer Osei accepts the same day. Farhi reports two unanswered requests to Joseph for the Agreement. Jennifer Osei reports the harassment is ongoing and being filmed. | |
| Dec. 22, 2023 | Farhi obtains the Settlement Agreements from prior counsel Joseph, sixteen days after her written statement that she did not have them — first time Plaintiff sees the complete document. Farhi: LMDN made "no commitments… beyond paying… and providing a 'neutral job reference'"; confidentiality obligations "are not reciprocal"; "term of possible concern… Paragraph 6(e)." Within hours Plaintiff replies that her terms were "no blacklisting, no cyberstalking, or monitoring" and the flagged provision "was not anything I agreed to." Farhi, 2:59 p.m.: "The first and second agreements do not show your e-signature. But you signed the 2 Acknowledgment… documents. We need to have a conversation. In the meantime, I will get back to Ms. Joseph and ask her for all documents signed by you." | Ex. B-3; ECF 80-2 ¶ 51, Ex. S-21; Am. Compl. ¶ 45, Ex. 29 |
| Dec. 28, 2023 | First in-person meeting at Farhi's office; first $5,000 installment paid in cash (firm receipt dated Dec. 28, 2023, issued to both Plaintiffs; statement posts payment 1/2/2024). | Exs. B, F |
| Jan. 8–9, 2024 | Jennifer Osei asks Farhi in writing whether the Agreement bars Stephanie from reporting: "Can she still blow the whistle to the parents of the school… since she would be reporting a crime"; "parents… have a right to know what's happening to there kids"; "Would this apply to her?" (statute attached). Farhi's written reply addresses only the risk of returning the settlement money; notes "illegal terms could be removed by a court"; says his IT person declined and he "will look for a forensic IT person as our next step." No mention of § 413, the Agreement's agency carve-outs, or reports of crime. | Ex. P |
| Jan. 11, 2024 | Farhi (via paralegal) to Joseph "again": the signed documents "that contain her signature or e-signature… Your prior transmission did not attach | Ex. B-5; Ex. F |

| | | |
|---|---|---|
| | those"; demands "fully executed documents" by 5:00 p.m. next day; "3rd party involvement." 3:07 p.m. Joseph: "the agreements were signed separately. But all the claimant, Ms. Osei has to do is sign the agreement for it to be fully executed." No further request; nothing to client; no bill entry. | |
| Jan. 11, 2024 | Stephanie Osei asks for status on the "fully signed documents" from prior counsel and "the next actionable steps." Farhi: another follow-up to Joseph; proposes a call "to discuss the other issues." | Ex. P |
| Jan. 15, 2024 | Telephone call, 10:00 a.m. (Zoom declined — "my paralegal sets up the Zooms"). On reporting, Farhi says only that Stephanie would not have to give back her settlement money. | Ex. P; Decl. J.O. ¶ 5; Decl. S.O. ¶ 9 |
| Jan. 16, 2024 | Farhi sends "Osei Timeline and notes.xlsx," prepared "after reviewing the materials you sent me," with questions for Plaintiff to answer; associate L. Noah on cc. Plaintiff completes it by hand and hands it in on Mar. 19, 2024. | Ex. E; Decl. S.O. ¶ 10 |
| Jan. 28–29, 2024 | Jan. 28: 1.6-hour conference with client. Jan. 29: cumulative billing passes $5,000 — retainer exhausted; no notice to client; no interim statement ever sent (statement's "Last bill" field blank). | Ex. F |
| Jan. 30 – Feb. 6, 2024 | Jan. 30: Farhi — "Mr. Adams is the person I've identified… I'll send him the other information"; forwards Adams's questions (devices/OS; "nature of the suspected activity… possible suspects"; "type of cyber harassment"). Feb. 1 8:40 AM: "Please just answer those 2 simple questions." Feb. 1 9:56 AM: Jennifer — laptop showing different locations; second administrator account. Feb. 6: device list; "Mr. Farhi has this particular information." | Ex. N-2; Decl. J.O. ¶ 12 |
| Jan. 30–Feb. 21, 2024 | Farhi telephone conferences with Robert Adams (Jan. 30, Feb. 8, Feb. 21); Noah emails Adams and sends him the spreadsheet (Feb. 1, 19); "device screening" conferred (Feb. 21). Farhi calls with client Feb. 11 and Feb. 16 — the last call before the withdrawal. | Ex. N-2; Decl. J.O. ¶ 12 |
| Feb. 2024 | Second set of footprints in the snow leading to a child's bedroom window; network video recorder found disabled. Reported to Farhi by telephone on Feb. 16, 2024; no response; no advice on reporting or preservation. Plaintiffs, awaiting counsel's direction, | Am. Compl. ¶¶ 36, 94(i), 101; Ex. S; Decl. J.O. ¶ 8 |

| | | |
|---|---|---|
| | defer the police report until after the withdrawal. | |
| Feb. 13, 2024 | Jennifer Osei emails Farhi (12:30 PM, two videos attached): power out at the residence; footprints already in the snow; a white truck pulls up on the street behind the house; mail carrier ruled out. Farhi bills 0.7 hrs "Review client email" on Feb. 13, 14, and 15. Feb. 16 call (0.6 hrs) — his last before withdrawal: Jennifer reports the second incident (person near a child's window; recorder disabled); Farhi says he will review the footage later and asks Plaintiffs not to send so much; no advice on reporting or preservation. | Ex. S; Ex. F; Decl. J.O. ¶ 6 |
| Feb. 17, 2024 (Sat.), 1:00 PM | Jennifer Osei meets the forensic examiner, Robert Adams, for the first time (arranged through the firm; see Feb. 19 entry, "correspondence from Mr. Adams and M.F. on future meetings with client"). Adams was retained and paid by Jennifer Osei. | Decl. J.O. ¶ 11; Ex. F |
| Feb. 15, 2024 | Stephanie Osei regains access to her own email account after ~1 year. Feb. 15–26: Plaintiffs send Farhi the materials it held, including her written communications with prior counsel about the terms she negotiated. Farhi bills "Review client email" nearly daily, Feb. 12–26. | ECF 80-2 ¶ 51; Exs. S-3, F |
| Feb. 29–Mar. 1, 2024 | Firm bills 3.8 hours: "Draft termination letter" (Noah). Thirteen days after the last client call; before the cease-and-desist letter is drafted; five weeks before the Adams report arrives. | Ex. F |
| Mar. 14–26, 2024 | Firm drafts, revises, obtains client approval of, and mails the cease-and-desist letter to LMDN (3.1 hours); "Correspond with forensic specialist" (Mar. 14). First direct correspondence from Noah to Plaintiffs (approval request, Mar. 25–26). | Ex. F; Ex. H |
| Mar. 19, 2024 | Stephanie hands Defendant, in person, her handwritten answers to the firm's Jan. 16 spreadsheet. No response from Defendant. | Ex. E; Decl. S.O. ¶ 10 |
| Feb. 16–Apr. 4, 2024 | Seven weeks with no call from Farhi to the client; statement shows ~20 Farhi entries "Review client email" (incl. the February residence report) and no outgoing advice. | Ex. F |
| Apr. 4, 2024 ◆ | Farhi email: "I am limited to 40 minutes and… my colleague Leiona Noah will also be on the call" — | Ex. R; ECF 101-2, Ex. D at 6 |

| | | |
|---|---|---|
| | first time Farhi identifies the associate to Plaintiffs (she had billed 27.9 of the engagement's 43 hours since Jan. 4, incl. the termination draft). 40-minute call with Farhi and Noah (Farhi's "conversation of last Thursday"); Adams report received this week; "did not know that it was previously supplied to you." Same date: two years from LMDN's Apr. 4, 2022 end-of-employment date. | |
| Apr. 5, 2024 | Farhi email: a "professional ethics or negligence claim against Ms. Joseph" is not precluded but "would require handling by an attorney specializing in that field"; Plaintiff's communications about terms are "irrelevant if you subsequently signed a form of agreement that did not include them"; contract claim depends on finding a signed version "on your laptop"; "We can speak again next week." Jennifer Osei: "Please do not give up on this case cause it almost sounds like you are." No further call. | Ex. R |
| Apr. 8, 2024 | Jennifer emails Defendant (cc associate, Adams): enforce the cease-and-desist "via court order"; "find out which private investigators, pi firms and … security firms have assisted"; set a meeting. No response. | Decl. J.O. ¶ 10; Ex. F (0.2-hr entry) |
| Apr. 9, 2024 ◆ | Farhi disengagement letter. Recites engagement "on or about September 17, 2023." Evaluates harassment/stalking under "beyond a reasonable doubt" standard; four pages on employer monitoring law; "unsuccessful in obtaining the devices" / "further computer forensic investigation would be needless"; Adams "found no spyware" but devices "could have been compromised"; "no further action can be taken in this case." No mention of any deadline, limitations period, administrative remedy, election of remedies, or return of file. | ECF 101-2, Ex. D; Am. Compl. ¶¶ 46, 94(g), Ex. 35 |
| Apr. 11, 2024 | Jennifer Osei to Farhi and paralegal: the engagement document "did not enter the right date that we retained you"; "We still request a refund"; requests (made before the withdrawal) for certified-mail tracking of the cease-and-desist, all correspondence with opposing counsel, and "the names of any businesses helping opposing counsel with discovery"; "we could not reach you for weeks." No correction, | Ex. K |

| | | |
|---|---|---|
| | refund, or accounting follows. | |
| Apr. 16, 2024 | Farhi (via paralegal) sends the itemized statement: 43 hours, $16,385, balance $11,385. "Our work vastly exceeds your initial retainer. This is yet another reason why there will be no refund." Adams "retained independently of our representation." "Results": (1) no signed agreement beyond Joseph's; (2) no spyware on two devices; (3) "no evidence to connect any bad acts… of your prior employer." Declines to address "baseless and defamatory claims." | Exs. F, F-1 |
| Apr. 18, 2024 | LMDN's New Jersey counsel (Nukk-Freeman & Cerra) responds to the cease-and-desist: denies knowledge of the conduct, directs that any claim be brought in court, threatens sanctions. Nine days after Farhi withdrew. | Ex. J |
| Apr. 22, 2024 | Associate forwards the Apr. 18 letter: "This confirms they received our letter and responded to it. Please be guided accordingly." Stephanie Osei replies with a detailed account of the engagement (balance-notice promise; one Ring video watched; "termination draft" dated 2/29/24 on the statement). Farhi: "Please do not respond to this email. Thank you." Jennifer: "We are still attached to the correspondence. Please advise." No reply. | Ex. Q |
| June 17, 2024 | Stephanie Osei files report with N.Y.C. Commission on Human Rights; assigned correspondence number; no follow-up contact from CCHR. | ECF 80-2 ¶ 52, Ex. S-19 |
| Aug. 31, 2024 | Two-year period on the Aug. 31, 2022 intrusion closes (period recited in Farhi's own letter, Ex. D at 4 n.5). | ECF 101-2, Ex. D at 4 n.5 |
| Nov. 15, 2024 | Plaintiffs visit CCHR in person; told to pursue the claim in court. | ECF 80-2 ¶ 52 |
| Dec. 12–18, 2024 | Attempts to reach N.Y. child-abuse hotline; Dec. 16 call rerouted; Dec. 18 contact with Statewide Central Register. | ECF 80-2 ¶ 53, Ex. S-20; Am. Compl. Exs. 30–31 |
| Dec. 2024 | Stephanie Osei appears at EEOC without counsel. | Am. Compl. ¶ 95; ECF 80-2 ¶ 51 |
| Early 2025 | Three-year (willful) FLSA period from last 2022 pay closes. FLSA claims never validly released (no court approval / DOL supervision); never advised. | 29 U.S.C. § 255(a); ECF 61-13; ECF 80-2 ¶ 45, Ex. S-12 |
| June 2025 | Complaint filed (month of Plaintiffs' father's death). Stephanie Osei added by amendment in 2025. | ECF 1; ECF 80-2 ¶¶ 51, 54 |

| | | |
|---|---|---|
| Sept. 18, 2025 | Term Sheet and Acknowledgment Form obtained for the first time, from Joseph's office. | Am. Compl. ¶ 45 |
| May 27, 2026 | Order granting leave to file a single all-inclusive amended pleading by June 16, 2026; pending motions administratively terminated. | ECF 60 |
| June 16, 2026 | Amended Complaint filed. Claim VIII (malpractice, Stephanie v. Farhi); Claim IX (IIED as to Farhi, ¶¶ 96, 101). | ECF 61 |
| Sept. 4, 2026 | Declaration of Stephanie Osei in opposition to LMDN's motion. | ECF 80-2 |
| Oct. 26, 2026 | Memorandum Order on Plaintiffs' motion for temporary restraints. | ECF 100 |
| Oct. 30, 2026 | Farhi motion to dismiss filed; return date Dec. 7, 2026. Exhibit C (unsigned "retainer" dated Sept. 17, 2023; $10,000) and Exhibit D (Apr. 9, 2024 letter) attached. | ECF 101 |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Osei v. Little Missionary Day Nursery, et al., Civil Action No. 3:25-cv-11991-MAS-JTQ

**INDEX OF EXHIBITS TO THE DECLARATIONS OF STEPHANIE OSEI AND JENNIFER OSEI IN OPPOSITION TO DEFENDANT FARHI'S MOTION TO DISMISS (ECF No. 101)**

Each exhibit is a true copy as described in the declaration to which it is attached. Where a thread is excerpted, the pages attached are identified. Redactions are limited to medical information and are marked "[REDACTED — medical]." Exhibit letters follow the designations used in Plaintiffs' memorandum of law; letters not listed (A, C, D, G, I, L, M, N, O, T) are not used.

| Ex. | Description | Attached to |
|---|---|---|
| B | Receipt of Kates Nussman Ellis Farhi & Earle, LLP for $5,000 payment (Dec. 28, 2023), issued to Stephanie and Jennifer Osei | Decl. S.O. |
| B-1 | Email exchange, Dec. 20, 2023 (fee and scope: $10,000 in two installments; "against your sister and you"; "connect the dots") (pp. 4–6 of 6; personal text-message image on p. 4 redacted as not relied upon) | Decl. J.O. |
| B-2 | Email thread, Dec. 16–17, 2023 — Farhi cover email transmitting "first draft of a retainer agreement" (p. 1) and Dec. 17 exchange (p. 17) (excerpted) | Decl. J.O. |
| B-3 | Email thread, Dec. 22, 2023 (transmittal of Settlement Agreement; Plaintiff's objections; "first and second agreements do not show your e-signature") (pp. 1–5) | Decl. S.O. |
| B-4 | Email, Farhi to Joanne Romero, Esq., Dec. 17, 2023, 12:10 p.m., "REQUEST FOR INFORMATION," with attached letter (3 pp.) | Decl. J.O. |
| B-5 | Letter, Farhi to Bennitta Joseph, Esq., Dec. 17, 2023, and email thread Dec. 18, 2023 – Jan. 11, 2024 (incl. Joseph: "the agreements were signed separately…") | Decl. J.O. |

| | | |
|---|---|---|
| E | Email, Jan. 16, 2024, transmitting "Osei Timeline and notes.xlsx" with questions for Plaintiff | Decl. S.O. |
| F | Itemized statement (pre-bill worksheet) of Kates Nussman Ellis Farhi & Earle, LLP, generated Apr. 16, 2024 (Client: "OSEI, Jennifer"), 7 pp. | Decl. J.O. |
| F-1 | Email transmitting the itemized statement, Apr. 16, 2024 ("there will be no refund") | Decl. J.O. |
| H | Email thread, Mar. 25–26, 2024 (associate transmits draft cease-and-desist for approval; Hewitt added; "It has been mailed out today") (pp. 1–5; one medical redaction) | Decl. S.O. |
| J | Letter, Nukk-Freeman & Cerra, P.C. (counsel for LMDN) to L. Noah, Esq., Apr. 18, 2024 | Decl. S.O. |
| K | Email, Apr. 11, 2024 (refund request; engagement date misstated as September 2023) | Decl. J.O. |
| N-1 | Email, Feb. 8, 2024 (Farhi transmitting examiner retainer) and engagement letter of MCR Strategies LLC (Robert H. Adams, Sr.) — client page | Decl. J.O. |
| N-2 | Email thread, Jan. 30 – Feb. 1, 2024 ("Mr. Adams is the person I've identified"; examiner's questions; "just answer those 2 simple questions") (pp. 1, 2, 4) | Decl. J.O. |
| P | Email thread, Jan. 8–14, 2024 ("Can she still blow the whistle…"; Farhi reply; "look for a forensic IT person as our next step") (excerpted: pp. 1, 4, 5, 10–12) | Decl. S.O. |
| Q | Email thread, Apr. 22, 2024 (forwarding of Apr. 18 letter — "Please be guided accordingly"; "Please do not respond") (pp. 1, 2, 4, 5; medical redaction) | Decl. S.O. |
| R | Email thread, Apr. 4–5, 2024 ("TODAY'S CALL"; "We can speak again next week") (pp. 1–4; medical redactions) | Decl. S.O. |
| S | Email, Feb. 13, 2024 (footprints | Decl. J.O. |

| | | |
|---|---|---|
| | in the snow; power interruption; white truck; photographs) (excerpted: pp. 1, 2, 4, 6) | |

Documents cited from the existing record and not re-attached: Amended Complaint and exhibits (ECF No. 61, 61-13); Declaration of Stephanie Osei dated Sept. 4, 2026 and exhibits (ECF No. 80-2); Defendant's exhibits (ECF No. 101-2).